JULY TERM, 1843.                205

McNair et al. vs. O'Fallon et al.—Peery vs. Cooper.

8  205
65a 628

PEERY vs. COOPER.

1. A. built a boat for B., for which the latter was to pay a stipulated price, so soon as there was sufficient water in the Grand River to let the boat out.  Held: That A. could not recover the price until the happening of this contingency, although B. had, in the mean time, sold the boat.

2. When contingencies are so remote and uncertain that they may never happen, or where, indeed, it is reduced to a certainty that they never can happen, the party may, in certain cases, be relieved in a court of equity, and even courts of law have sometimes disregarded the condition in such cases; but not where the happening of the contingency, as in this case, is morally certain.

APPEAL from Grundy Circuit Court.

Dunn, *for Appellant.*

1. The court erred in refusing to give the instructions asked for by the appellant.

2. The court erred in giving the instructions asked for by the appellee.

3. The court erred in overruling the appellant's motion to set aside the verdict, and grant a new trial.

4. The court erred in overruling the appellant's motion to arrest the judgment.

Clark, *for Appellee.*

1. The true rule in the construction of contracts 'is, to enforce the mutual understanding of the parties, and sometimes the law will control even the literal terms of the contract, if they manifestly contravene the obvious purpose and understanding of the parties, and many cases are given in the books in which the plain intent has prevailed over the strict letter of the contract. — 2 Kent's Com., 554, 555; 2 Adk., 32; 3 Randolph's Rep., 486.

2. The evidence in this case shows that the parties to this contract understood, at the time they contracted, that the boat was to be paid for the spring after it was built, or in a reasonable time, and not that the payment was tô depend upon the rise in Grand River, which might never take place. — 3 Randolph, 486.

3. The usual rise in the river not taking place, the money for the boat became due, and was payable to the plaintiff in a reasonable time.

4. In this case the plaintiff was entitled to pay for the boat at any time after the defendant sold it. By selling the boat before the rise took place in the river, and then receiving the same from the builder, he waived any right to further delay of payment, for, by the act of selling the boat, he appropriated it to his use.

Napton, *Judge, delivered the opinion of the Court.*

This was an action of assumpsit, brought by the plaintiff against the defendant, who is appellant here, to recover the purchase money of a flat-boat, built by plaintiff, for defendant, in the winter of 1842. The declaration contained a special count, setting forth a special contract, and two general counts, for work, labor, and goods, sold and delivered. The issue was non-assumpsit, and the trial resulted in favor of the plaintiff, whose damages were assessed at one hundred and sixty-one dollars.

It was proved upon the trial, that the plaintiff engaged to build for the defendant a flat-boat, fifty-three feet long· and sixteen wide, for which he was to be paid three dollars per foot, and to be allowed something *extra* for caulking the gunwales, putting in pumps, and building a canoe. It was also agreed between the parties, that the plaintiff was to be paid so soon as there was sufficient water in the Grand

River to let the boat out, allowing, after that contingency happened, time enough for the defendant to go to St. Louis with his boat load, sell his produce, and return.

It was also proved that the boat was built according to contract; that the extra work on it was worth between five and six dollars; that the defendant accepted the boat as a good and substantial one, and sold it to another on the same terms he himself had purchased it; and, further, that since the boat was built, and up to the time the suit was commenced, the Grand River had not been in a condition to allow the boat to go out; that it usually rose in the spring, but during this season did not rise until later than usual, and not until after this suit was instituted.

Upon this state of facts, instructions were asked of the court by each party, but the court refused to give the instructions asked for by the defendant, and in substance instructed the jury, that, if they believed the plaintiff had complied with his contract, and built the boat accordingly, and it had been accepted by defendant, and disposed of by him, they would find for the plaintiff, whether the Grand River had ever been in a navigable condition or not since the boat was finished, and before the suit was commenced.

Under these instructions, the jury found a verdict for the plaintiff, and the defendant made an unsuccessful motion for a new trial, and preserved, in proper form, his exceptions to the several opinions of the court.

We are of opinion, that on the state of the facts detailed in this bill of exceptions, the plaintiff was not entitled to recover. We agree with the counsel for the plaintiff, that contracts must be construed according to the plain intent and meaning of the parties, and where that intent is manifest, a literal interpretation will be avoided, to give effect to that intent. But the parties to this contract appear to have well understood each other, and have placed their meaning and understanding in very appropriate terms.

This is not like the case where A. agrees to pay B. one hundred dollars *next harvest*. There, A. is bound to pay when harvest time arrives, though a tempest, or some other unforeseen act of Providence may have destroyed the crops, and no harvest, in fact, is reaped during the year. The Grand River may usually rise in the spring, but the day, or week, or month, cannot be certainly known; it may not rise at all in a particular season; yet these are contingencies of which the defendant assumed the risk, and he must wait until the contingency happens on which his pay, by contract, depends.

When contingencies are so remote and uncertain that they may never happen, or where, indeed, it is reduced to a certainty that they never can happen, courts of equity, in certain cases, have relieved a party, and considered the contract as unconditional. So, even courts of law, in case of contracts upon contingencies which can never happen, will sometimes disregard the condition. But this contract does not belong to any of these classes. It is morally certain, that without a subversion of the laws of nature, the Grand River will rise and fall at intervals. A contract contingent on its rise is, therefore, not an uncertain or very remote contingency, and such a contract would be enforced both at law and equity.

It is of no consequence whatever, that the defendant had sold the boat. This he had a right to do, on such terms as suited him, though it appears that he actually sold to the purchaser on the same conditions on which he had bought from the plaintiff. It did not concern the plaintiff whether the defendant sold the boat or not; both the defendant and his vendee had a right to expect, that, by their contract, the boat was not to be paid for until the Grand River was in a navigable condition. If the river had been in such condition, and the defendant had failed to make his contemplated trip to St. Louis, this neglect of his to avail himself of the rise would clearly not excuse him.

His responsibility, under his contract, would have arisen when the contingency on which it was made happened, and a reasonable time thereafter had elapsed to allow the defendant to have made his trading expedition, but it would be his own fault if, after the rise in the river, his adventure was abandoned.

Judgment reversed.