## FISHER v. HOPKINS ET AL.

## CHADWICK ET AL. v. HOPKINS ET AL.

PRACTICE—PARTIES—ADMINISTRATOR OF DECEASED JOINT OBLIGOR AND SURVIVING CO-OBLIGOR SUED JOINTLY—CONTRACT FOR REPURCHASE OF CORPORATE SHARES — INTERPRETATION — REASONABLE TIME—JUDGMENT.

1. Although at common law the rule was absolute that the estate of a deceased joint contractor was not liable to the obligee in the joint contract except in case of the insolvency of the surviving joint obligor; and the legal representative of the deceased could not be sued in an action at law on such contract jointly with the survivor; the rule is otherwise under the code, and in such an action the representatives of a deceased joint obligor may be joined with the surviving co-obligor.

2. The inability of a court of law to render separate and different judgments in a single action has disappeared under the code, and upon a general verdict in an action

against a surviving joint obligor and the administrator of a deceased co-obligor, separate judgments may be entered against the defendants.

3. That all such parties should be joined as defendants, and that their rights and liabilities be determined in a single action is the true intent and meaning of the provsions of section 2395 of the Rev. Stat. 1887, with reference to joinder of defendants.

4. An agreement to repurchase corporate shares, and to pay for the same as soon and fast as the purchasers are able, financially to do so, without sacrificing their interests in, or the property of, the company issuing such shares, does not contemplate that the purchasers may take all the time that they desire, and that may be convenient for them to take, but the law will imply that the contract means a reasonable time.

5. Reasonable time is shown to have elapsed, by proof that the suit was commenced a little more than four years after the date of the alleged contract.

6. Such contract being set up by defendants, the plaintiff denying the same, but alleging and proving a contract for money to become due three years from his original purchase of the stock, financial ability to pay on the part of the obligors need not be shown by the plaintiff, but if material, want of such ability is a matter to be established as a defense.

7. The amount of the indebtedness being the same under either contract, it is not material upon which contract the jury based their verdict.

8. The cause of action against the administrators being a contract to which the decedent was a party, the judgment against them should not be a personal one, but should be that they pay, in due course of administration the amount ascertained to be due. (Laws 1890-91, p. 272, sec. 13.)

[Commenced in District Court October, 1889. Decided December 1, 1893.]

ERROR to District Court for Laramie County. HON. RICHARD H. SCOTT, Judge.

This was an action brought by Edwin W. Hopkins against Charles F. Fisher and John M. Chadwick and Charles F.

Fisher, administrators of the estate of Jehu J. Chadwick, deceased, upon a contract for repurchase of one hundred and fifty shares of stock of the North Crow Land & Cattle Company. The plaintiff claimed to have become the owner of said shares by purchase from Charles F. Fisher and Jehu J. Chadwick, in October, 1884, under an agreement that in case he became dissatisfied with the purchase, they would at the end of three years, at his option, refund to him the money paid by him therefor, with interest at ten per cent per annum, and take back the shares of stock. The plaintiff relied upon a verbal promise of Fisher to that effect, and statements to the same effect contained in two letters written by him, one of which inclosed the certificates of stock. To connect Chadwick with that agreement plaintiff relied upon the following facts: that until a short time previous to the purchase of the shares by the plaintiff Fisher and Chadwick had been copartners, engaged in the ranch and cattle business, and had incorporated the company aforesaid for the purpose of continuing the same business; that Chadwick furnished an equal amount of the stock purchased by plaintiff and received $5,500.00 of the money paid therefor, Fisher receiving $6,-500.00; that Fisher's greater proportion of the purchase price was claimed by him for conducting the negotiations, according to the admissions of Chadwick; but Fisher testified that he received a larger amount in consideration of some trips he had made in connection with the general business for which he had previously made no charge. Plaintiff also relied upon certain letters which he had received from Chadwick, and certain admissions which the latter had made with reference to the obligation to the plaintiff. On the part of the defense it was claimed that the original contract was the personal obligation of Fisher, and that the liability to repurchase the stock so far as Chadwick was concerned arose under a new contract alleged to have been made in the fall of 1885, which required Fisher and Chadwick to take the shares and to pay the plaintiff therefor only so fast as the obligors were financially able to do so without sacrificing their interest in, or the property of the company. Plaintiff denied the making

of any new contract, and testified that in the fall of 1885 he notified both Fisher and Chadwick that he had concluded to withdraw, and would demand his money according to the original understanding, and that Chadwick then said that they would pay him when the money became due and perhaps before that, but that they would be compelled to sell some property in order to do it. Chadwick died September 23, 1888, and John M. Chadwick and Charles F. Fisher were appointed administrators of his estate.

The case was tried to a jury, and a verdict was returned for plaintiff for $14,554.90. Separate motions for new trial were made and overruled, and the administrators and Charles F. Fisher prosecuted separate proceedings in error. The cases were heard and determined together. Upon the trial, in addition to the instructions quoted in the opinion the court at the request of the plaintiff charged the jury as follows:

"1.  The jury are instructed as a matter of law that if as an inducement to another to purchase stock in an incorporated company one agrees, in consideration of said purchase, to take back the stock and refund the purchase money, with interest thereon, within a certain period of time, at the option of the purchaser, such contract is enforcible, and if the purchaser exercises his option to return the stock and have refunded his money within the period prescribed by the contract, the purchaser may recover upon a tender of the stock the amount of the original purchase money with interest as agreed." "2.  If the jury believe from the evidence that the plaintiff purchased the one hundred and fifty shares of stock in the North Crow Land & Cattle Co. from the defendant Charles F. Fisher, and Jehu J. Chadwick, and that the condition of said purchase was that the said plaintiff should have the option of returning said stock and having refunded the amount of money which he paid for the same, with interest at the rate of ten per cent per annum, that the said Fisher and Chadwick would be liable to pay to the plaintiff within the time agreed upon at his option, the amount of money paid by him for said stock, with interest thereon at the rate of ten per cent per annum, and if you find that such agreement and

such conditions of the purchase were entered into by the said Charles F. Fisher and that said Chadwick became interested in said sale and purchase, then he became bound to all the terms and conditions of said purchase and contract."

"4. If the jury find from the evidence that the time the stock in the North Crow Land & Cattle Company was purchased by the plaintiff, that he purchased under the agreement and condition that at the end of three or five years, if he was dissatisfied, he could return said stock and be refunded the original purchase price with interest at the rate of ten per cent per annum, and if you further find from the evidence that at the time the defendant Charles F. Fisher and Jehu J. Chadwick were partners and jointly interested in the sale of said stock to the plaintiff, then any agreement made and entered into by the said Charles F. Fisher and the said plaintiff which became one of the conditions of said purchase became and was binding upon the said Jehu J. Chadwick, deceased, and upon the administrators of his estate."

"5. In this case, if you find for the plaintiff, the measure of damages will be the amount of money originally paid by the plaintiff for the stock with interest thereon at the rate of ten per cent per annum, less the payments which are shown to have been made, said payments to be credited as of the time they were made respectively."

To these instructions defendant excepted. On request of defendant the court gave the following instructions:

"1. If you find from the evidence that there was an original agreement with and by Charles F. Fisher alone to repurchase the stock in question, but that subsequently there was a new agreement with and by Charles F. Fisher and Jehu J. Chadwick to make such repurchase, such new agreement would set aside the original one, and the plaintiff cannot recover except upon the new agreement."

"2. If you find from the evidence that a new agreement took the place of the original one for the repurchase of the stock, and that under such new agreement payment was to be made only as proceeds could be realized from the cattle and ranch property of the company upon sales of the same with-

out sacrifice; and if you further believe from the evidence that Charles F. Fisher and Jehu J. Chadwick and the administrators of the latter used due diligence to sell and realize from said cattle and ranch property and were unable to realize therefrom any amount above the reasonable running expenses of such property and such sums as were necessary to protect and care for said property and such sums as have already been paid to the plaintiff, then you will find for the defendants."

*Lacey & Van Devanter*, for plaintiffs in error.

The judgment against administrators not being made payable out of the decedent's estate has no support in the pleadings, evidence or verdict. The instruction based upon a contract made in 1885 required the jury to find for the plaintiff, not upon the contract alleged in the petition, but upon one which he denied both in his reply and in his testimony. Under such a contract it must have been shown that the obligors were able to pay without sacrifice of the property, or that they would have been able with the exercise of reasonable diligence. The question of reasonable time was not in issue. Mr. Chadwick was not bound by the contract made by Fisher; he was not a party to it, and it was error to charge the jury that if he became interested in the sale he would be liable. They were not partners when the sale to Hopkins was made. At common law the death of one of two joint contractors severs the promise and renders the survivor liable thereon as on his several promise. In such case the survivor only can be sued on the contract, and the legal representative of the deceased party, if sued, may plead the survivorship in bar or give it in evidence on the trial. (Rice, appellant, 89 Mass. (7 Allen), 112-114; Burnside et al. v. Mervick et al., 4 Metc., 537-544; Simonds v. Center, 6 Mass., 18; Foster et al. v. Hooper, 2 Mass., 572; U. S. v. Price, 9 How. (U. S.), 83-90-95; Pickersgill v. Lahens, 15 Wall., 140; Sherman v. Kruel, 42 Wis., 33; Cairnes v. O'Bleness, 40 Wis., 469; Jones v. Est. of Keep, 23 Wis., 45; Voorhis v. Childs Ex., 17 N. Y., 354; Richter v. Poppenhausen, 42 N. Y., 373; Hauck v. Craighead, 67 N. Y., 432; Barnes v. Brown, 130 N. Y., 372;

Kennedy v. Carpenter, 2 Whart. Pa., 344; Rowan v. Woodward, 2 A. K. Marsh., 140; Poole v. McLeod, 1 S. & M., 391; Grant v. Shurtel, 1 Wend., 148; Waters v. Riley, 2 Harris & Gill, 305; Lanier v. Irvine, 24 Minn., 116; Trustees v. Lawrence, 11 Paige, 80; Bradley v. Burwell Denio, 65; Atwell v. Milton, 4 Hen. & Munf. (Va.), 253; Watkins v. Tate, 3 Call. Va., 521; Gryness v. Pendleton, 4 Call. Va., 130.)   The allowance of testimony of Hopkins as to transactions occurring prior to the death of Jehu J. Chadwick seems to violate Sec. 2590, Rev. Stat.   The personal agreement of Fisher to take back the stock cannot be considered as one of the conditions of the purchase by Hopkins; the sale was a completed one and the instructions to the effect that Chadwick's estate was liable in case he became interested in the sale were erroneous.

*Potter & Burke,* for defendants in error.

The objection to the form of the judgment does not relate back to the verdict.   If wrong this court can direct a modification.   The real issue was, when was Mr. Hopkins to be paid? On the theory that the jury might believe the testimony of Mr. Fisher the instruction relative to the alleged contract of 1885 was proper.   The position is not well taken that plaintiff could only recover upon the facts as alleged in the petition, regardless of the answer.   It was the duty of the court to state to the jury the construction which the law placed upon the language used in the alleged contract of 1885; therefore the question of reasonable time was in issue.   An agreement to do a certain thing, fixing the time within which it is to be done upon the happening of an event, is in law an agreement to do it within a reasonable time.   (Smithers v. Junker, 41 Fed., 101; Lewis v. Tipton, 10 O. St., 88; Hicks v. Shouse, 17 B. Mon. (Ky.), 483; Ubsdell v. Cunningham, 22 Mo., 124; Williston v. Perkins, 51 Cal., 554; Nunez v. Dantel, 19 Wall., 560; Sears v. Wright, 24 Me., 278; Stewart v. Marvel, 4 N. E., 743; Craemer v. Wood, 102 Mass., 441.) If any instruction did not go far enough, or comprehend the whole case, it was the duty of defendants to present an instruction embracing the law as they understood it.   (Post v. Gar-

row, 18 Neb., 688; Klosterman v. Olcott, 25 Id., 387; Woodruff v. White, Id., 753; State v. Illsley, 81 Ia., 49; Churchill v. Grosswig (Ind.), 46 N. W., 1063; State v. Peterson, 38 Kan., 204.) The objection to the testimony of the plaintiff is not well taken. Both of the administrators afterwards testified—Fisher respecting the same transaction—which cured the objection if there had been any.

Again, it was claimed that deceased and Fisher were joint contractors. Upon that theory the testimony was admissible against Fisher and the administrators did not ask to have it stricken out as to them. (8 Bull., 29.) The contract sued on was a condition of the sale to Hopkins. The following are similar cases and illustrate the proposition. (Meyer v. Blair, 109 N. Y., 600; Morgan v. Struthers, 131 U. S., 246; Struthers v. Drexel, 122 U. S., 487; George v. Braden, 70 Pa. St., 56.) The instruction with reference to the contract as a condition of the sale was proper. One accepting the benefits of a contract accepts all the conditions thereof. (White v. Lane, 14 Mich., 124.) Chadwick affirmed the sale by accepting benefits thereof. Fisher was his agent in the transaction. (Elwell v. Chamberlain, 31 N. Y., 611; Fisher v. Stevens, 16 Ill., 397; Henderson v. Cummings, 44 Id., 325; Commonwealth v. Lang, 14 Pick., 76.) At common law the rule as to liability of representatives of deceased joint contractor was as contended for by counsel for plaintiffs in error. The reason of the rule was that the court not being authorized to render different kinds of judgments against several defendants in the same suit, and this kind of a suit requiring one kind of judgment against the survivor and another against the representatives of deceased, relief could not be afforded in a joint action. That reason does not exist under the code. (Rev. Stat., Secs. 2658-2402.) Under the code practice no reason exists for a denial of the right to a joint action. (Pomeroy Rem., Sec. 304; Myers Ex. v. State, 47 Ind., 293; Braxton v. State, 25 Ind., 82; Owen v. State, Id., 107; Trimmier v. Thompson (S. C.), 10 Richardson, 164.) If the contract is several suit could be brought against all in the same action.

CONAWAY, JUSTICE.

These two cases in error in this court arise from a single action in the district court.

Edwin W. Hopkins brought his action in that court against Charles F. Fisher, and John M. Chadwick and Charles F. Fisher, administrators of the estate of Jehu J. Chadwick, deceased. He obtained judgment against them. Charles F. Fisher brings the cause to this court for review by his individual petition in error. John M. Chadwick and Charles F. Fisher, administrators of the estate of Jehu J. Chadwick, deceased, also bring the cause to this court for review by their separate petition in error.

The petition of plaintiff Hopkins filed in the trial court alleges a joint and several contract of Charles F. Fisher and Jehu J. Chadwick with himself. Before the commencement of this action Jehu J. Chadwick died, and the action is against his administrators and Charles F. Fisher as joint defendants. The administrators of the estate of Jehu J. Chadwick, deceased, demurred to this petition on the ground that it does not state facts sufficient to constitute a cause of action against them in not alleging the insolvency of Charles F. Fisher, the surviving joint contractor; and that there is an improper joinder of causes of action against Charles F. Fisher individually and against these administrators.

At common law the rule was absolute that the estate of the deceased joint contractor was not liable to the obligee in the joint contract except in case of the insolvency of the surviving joint obligor. If the survivor was solvent there was a plain and adequate remedy by action at law against him. In such case the liability of the estate of the deceased joint obligor was to contribute to him after the debt was collected from or paid by him. In case of his insolvency the obligee in the joint contract could bring his action in equity against the administrators of the deceased joint obligor. But the petition alleges a joint and several contract. It is not claimed that these rules apply or ever applied to such a contract.

But the same point is raised by an instruction to the jury

requested by the defendant administrators and refused by the
trial court. This instruction is as follows:

"The plaintiff cannot recover against the administrators
of Jehu J. Chadwick, deceased, in this action, upon a joint
agreement or contract jointly made, by Charles F. Fisher and
Jehu J. Chadwick."

There is evidence in the record from which the jury might
have found that the contract in question was joint and not
joint and several as alleged. And there is no allegation in the
petition of the insolvency of the survivor. Therefore, if the
common law rule prevails, the instruction should have been
given, and the refusal to give it was error which might have
been very prejudicial.

The question is thus fairly presented whether under our
code the common law rule prevails that the administrators
or executors of a deceased co-obligor in a joint contract are
liable to the obligee in an action on the contract only in case
of the insolvency of the survivor. This is a question upon
which our American courts are in direct and hopeless con-
flict. It is a question of first impression in this State, and it
is our duty to endeavor to ascertain and adopt the view which
is most in harmony with the provisions of our code of civil
procedure, and best adapted to carry out those provisions in
their true meaning and intent.

The one sufficient reason for the rule of the common law
that the surviving joint obligor and the representatives of
the estate of the deceased could not be joined as defendants
in an action at law was the inability of a court of law to render
separate and different judgments in a single action—against
the survivor to be satisfied de bonis propriis, and against the
administrators of the estate of the deceased to be satisfied
from such estate in due course of administration. From the
same reason it followed that the survivor alone was liable in
an action at law, and that if he were solvent and the action
thus available for the collection of the debt the plaintiff
need go no further and he was not permitted to do so.

In the code states this the only reason for the rules of the
common law upon this subject has entirely disappeared.

There is no longer any objection to joining causes of action which were formerly distinguished as legal and equitable. Our courts are no longer hampered as to the form of the judgments they may render in one single form of action, called a civil action. But sometimes a rule of law survives after the reason for it is gone. This may be the case where the reason for the rule has been abolished by legislation, unless concurrent legislation also furnish a new rule.

With all due respect for the opinions of some eminent courts which seem to hold differently, we are of the opinion that codes such as ours, doing away with the reason of the common law rule under consideration as to joinder of parties defendant, also furnish, in terms sufficiently clear, a new rule to be followed in its stead. As to parties defendant we have the following broad provision:

"Any person may be made a defendant who has or claims "an interest in the controversy adverse to the plaintiff, or who "is a necessary party to a complete determination or settle- "ment of a question involved therein." Rev. Stat., Sec. 2395.

The defendants in the case at bar all deny any liability on their part to the plaintiff in the action. The primary question to be determined is whether they are so liable. If it be determined that they are liable, the next question is the amount of such liability. In both these questions the defendant administrators are interested in their representative capacity precisely to the same extent as their decedent would be interested were he alive. It is just as necessary for them to defend for the estate as it would be for him to defend for himself. If the action were against the survivor alone they would still be interested. It does not change the extent of their liability whether they are held to pay to the obligee in the joint contract or to the surviving obligor by way of contribution. To a complete determination or settlement of the questions involved they are necessary parties. Their interest in the amount of the judgment, whether the action be against the survivor alone or not is direct. It is also adverse to the plaintiff. If the action were against the survivor alone their liability to contribute could be no more than their proportion

of the judgment collected from him. If he succeeded in defeating the action, there would be no contribution. It seems evident that it is the true intent and meaning of this provision of the code, and, indeed, authorized by its express language, that all of these parties should be joined as defendants, and that their rights and liabilities should be determined in a single action. The evident policy of the legislation is to avoid a multiplicity of suits and to reach an end to litigation.

The English courts no longer follow the old common law rule making the solvent surviving joint obligor alone liable to the obligee in the joint contract. They permit the action to be brought against the administrators in the first instance, whether the survivor be solvent or not. Several of the American States hold with the English courts. See Pom. Rem. & Remedial Rights, Secs. 302, 303 and 304; Bliss on Code Pleading, Secs. 105, 106; Braxton v. The State, 25 Ind., 82; Burgoyne v. Ohio Life Ins. Co., 5 Ohio St., 586; Trimmier v. Thompson, 10 Richardson (S. C.), 164.

A number of code States hold differently, but we think not with the better reason. See Voorhis v. Childs, Executor, 17 N. Y., 354; Sherman v. Krenel, 42 Wis., 33.

We are of the opinion that the trial court did not err in overruling the demurrer nor in refusing the instruction quoted.

In order to discuss some further assignments of error it is necessary to have before us the issues made by the pleadings.

The petition of plaintiff Hopkins sets up a contract as made on or before October 15, 1884. It alleges that as a consideration and inducement to him to purchase stock in the North Crow Land and Cattle Company, Charles F. Fisher and Jehu J. Chadwick did jointly and severally agree to and with said plaintiff that if he would purchase stock in said company and pay cash therefor, if he became dissatisfied with such purchase, they would, at the end of three years from the purchase, take the stock back at his option, and pay him his money invested therein with ten per cent. per annum interest from the time of investment. It is further alleged that on

October 15, 1884, he received 150 shares of such stock, and paid to said Fisher and Chadwick $12,000.00 therefor; and that thereafter, on or before September 15, 1885, he became dissatisfied with his purchase and notified said Fisher and Chadwick that he would exercise his option of returning said stock to them and receiving from them therefor the said sum of $12,000.00 with interest thereon at the rate of ten per cent. per annum from October 15, 1884. A payment of $3,000.00 of this sum on May 19, 1887, and another payment of $200.00 on September 23, 1888, is alleged, and it is further alleged that no other payments have been made. Charles F. Fisher in his separate answer, and John M. Chadwick and Charles F. Fisher, administrators of the estate of Jehu J. Chadwick, deceased, in their separate answer, deny that any such agreement was ever made, and deny that any payments were ever made on such an agreement. What they allege on these points they state in the following language:

"And for a second and further defense by said defendants to said cause of action set forth in said amended petition, the defendant alleges that on or about the tenth day of September, A. D. 1885, at the county aforesaid the said plaintiff being then and there the holder and owner of one hundred and fifty shares of the capital stock of the North Crow Land and Cattle Company, did then and there agree to and with said defendant Charles F. Fisher and said Jehu J. Chadwick to sell and deliver to them all of his said shares of the capital stock of said company in consideration of the promises and agreements of the said defendant Charles F. Fisher and the said Jehu J. Chadwick then and there made to take the same and pay said plaintiff therefor the amount which he, the said plaintiff, had paid for the said shares of stock together with interest thereon at the rate of ten per cent. per annum from the date when he the said plaintiff had taken the said shares of stock and advanced the money to pay for the same, such payment to be made by said defendant and Jehu J. Chadwick as soon and fast as they were able financially to do so without sacrificing their interests in or the property of said North Crow Land and Cattle Company."

The jury were instructed that such an agreement as this, if entered into by said Fisher and Chadwick, does not contemplate that they could take all the time that they may desire and that may be convenient for them to take, but that the law will imply that that means a reasonable time; so that if you further believe that a reasonable time for the disposition of the property has elapsed since the agreement of the said Chadwick and Fisher to purchase the stock of the plaintiff you must find for the plaintiff." This is assigned as error. We think this instruction is not erroneous. It is not a sacrifice of property to put it upon the market and sell it at the market price. All the time necessary to do this is a reasonable time. But it is urged that there is no proof that a reasonable time for the sale of the property had elapsed when this action was begun. The contract is alleged and testimony introduced tending to prove it as of date September tenth, 1885. It is shown by uncontroverted testimony that this action was commenced about the first of October, 1889. Here is a lapse of a little more than four years—certainly ample time.

It was claimed in argument that in order to recover on this contract financial ability to pay on the part of the obligors should be shown, and that this instruction of the court to the jury does not require such a showing and is therefore erroneous. It should be remembered that the plaintiff Hopkins in his pleadings and in his testimony denied the existence of such contract. He alleged and proved a contract for money to become due three years from the date of his purchase of the stock of the company. Defendants set up a different contract made at a subsequent time, fixing no certain time when any money should become due. It was incumbent on them to establish their defense.

Charles F. Fisher testifies that the time of the first payment under the contract was to be within two years from its date. Jehu J. Chadwick in conversation with Mrs. Kate E. Hopkins and others stated that the money on the contract was due in the fall of 1887. This is all inconsistent with the idea that payment was made conditional on the financial

ability of the parties. Really the contract set up by the defendants would seem not to question but rather to assume, the financial ability of the obligors to fulfill their contract. The evidence also shows that they had abundant means to do so. These means consisted of a large number of neat cattle and horses, a large quantity of land, forty miles of fence, ranch improvements, implements, etc. The obligors furnished all this property to the North Crow Land and Cattle Company. They continued in the control of the property and the business. The capital stock of the company was placed at $100,000.00. Hopkins paid eighty cents on the dollar for his stock. This all bears on the question of their financial ability. The fact that they received $12,000.00 from Hopkins is very material in this connection. The testimony of defendant Fisher shows an entire misapprehension of the effect of such a contract as he alleges and attempts to prove. He seems to assume that it gave himself and Chadwick the right to carry on the business without contraction and without limit as to time, and that they were under no obligation to pay under the contract unless they could do so from the profits of the business. In answer to the question, "What was the agreement as to when the money should be obtained," he says: "By selling off company property. For instance if we sold off a bunch of horses for ten thousand dollars, any amount that was needed out of that to pay running expenses or indebtedness was first to be deducted, and then the balance applied to him." This construction would destroy the essential elements of a contract. It would make it of no binding force. It would leave the obligors at liberty to sell or not and to pay or not at their option. It is simply a claim of the right to take the stock of Hopkins and pay for it if they should find it profitable or desirable to do so, otherwise not to take it or pay for it.

The inconsistency of the testimony of Fisher with the contract which he sets up in his pleading, and the inherent improbability that Chadwick would make such a losing contract as that alleged to have been made on September tenth, 1885, would seem to leave the preponderance of the evidence

largely in favor of the contract alleged by plaintiff Hopkins. The record does not reveal upon which contract the jury based their verdict. Really it is not material. The amount of indebtedness is precisely the same under one as under the other. It is $12,000.00 with interest at ten per cent. per annum from October 15th, 1884, less the payment mentioned. The answers of defendants show their liability after the lapse of a reasonable time for the disposal of the necessary amount of property. They do not show the lapse of time nor the amount of the liability. If they did the answers alone would sustain the verdict and the judgment. These particulars are supplied by uncontroverted evidence.

There are some other assignments of error, but under these views they become immaterial.

The form of the judgment as to the administrators is objectionable. It is against John M. Chadwick and Charles F. Fisher, administrators of the estate of Jehu J. Chadwick, deceased. This might be considered as a personal judgment against these administrators for waste, to be satisfied de bonis propriis. No such a cause of action or any personal cause of action against the administrators as such is alleged or proven. The cause of action against the administrators is the contract to which the decedent was a party. The judgment against the administrators should be reformed and should be that the administrators pay in due course of administration the amount ascertained to be due. Session Laws 1890-91, page 272, Sec. 13. This section seems to be a legislative enactment of a pre-existing rule of law. See Rice v. Innskeep, 34 Cal., 224; Senescal v. Booton, 34 Pac. Rep. (N. M.), 446, and cases cited.

These causes are remanded to the district court with directions to modify the judgment as to the administrators in accordance with this opinion. When so modified the judgment of the district court will stand affirmed, each party to pay his own costs in this court.

GROESBECK, C. J., and CLARK, J., concur.