Crew, J.
The rights of the respective claimants to the 360 shares of stock involved in the present controversy must, as is apparent from the above statement of facts, be ascertained and de *143 termined from a consideration of whether or not the agreement of September 23, 1899, was, and is, a valid contract of mutual obligation binding upon all the parties thereto. It is claimed by defendant in error that this agreement is void and of no effect because, as they insist, it is wholly uncertain and illusory in its nature, and is without mutuality or consideration. Referring to the writing itself we find in the initial paragraph thereof this language: “J.' R. Stewart agrees to sell 360 shares of the capital stock of The Bradford Mill Company to W. T. S. Johnson, George F. Stewart and Lewis N. Gatch, and said W. T. S. Johnson, George F. Stewart and Lewis N. Gatch agree to buy the same in equal proportions, on the following terms and conditions, viz.: — ” Here we have, pertinently and plainly expressed, mutual and concurrent engagements, equally obligatory upon the respective promisors; upon the one to sell, and upon the others to purchase, the 360 shares of stock upon such terms as are in said instrument expressed, and such as are necessarily implied therefrom. It is then further in said writing stipulated and agreed that: “The purchase price of said stock shall be' its par value of one hundred dollars ($100.00) per share.” Thus we find in the language and terms of ■ the instrument itself, absolute certainty as to parties, subject-matter and consideration — every element necessary to a complete and valid contract of purchase and sale; and if the foregoing were the only provisions of said instrument it could not be doubted, but that the contract as thus expressed, would be one of binding obligation upon all the parties thereto. But *144 we are told by counsel for defendants in error, that by force of the provisions of the third clause of said instrument, the vendor, J. R. Stewart, is wholly deprived of the right to demand or exact payment for said 360 shares of stock from the purchasers thereof, in any manner other than by application to the purchase price of future dividends on the stock itself; and that the effect of this is to destroy and extinguish any previously expressed personal obligation on the part of said purchasers, and to convert what would otherwise be a valid contract of mutual and binding obligation into a mere unilateral agreement without consideration. The language of this clause is as follows: “3d. All dividends declared on said stock shall be paid to said J. R. Stewart, until it is paid in full. Enough of said dividends shall be retained by him to make four per cent, on the balance of said purchase price unpaid at the time said dividends are respectively declared, and the balance thereof applied by him on said purchase price; and as soon as said stock is fully paid fory either through dividends or otherwise, it shall be delivered to said purchasers. In case the dividend declared any year shall be less'than four per cent, no interest shall run on said purchase price in excess of the dividend declared, and if none be declared there shall be no interest.” It will be observed that the language of the clause is not, that payment of the purchase price shall be made, or may be exacted, only- out of dividends declared, but that: “All dividends declared on said stock shall be paid to said J. R. Stewart until it (the purchase price) is paid in full.” In other words, *145 the mode of payment prescribed is not exclusively from dividends on the stock itself, neither is payment conditioned wholly, or finally, upon the alternative that dividends shall be declared, but the only requirement is that all dividends declared shall be applied in payment of the purchase price. This stipulation or requirement is in no wise necessarily inconsistent with, nor does it in any manner impair, avoid or extinguish, the obligation theretofore imposed upon* the purchasers by their express words of formal agreement to purchase. “That which is made certain in one part of a written instrument, can not be overcome or changed by words in another part, unless such other words are of equal or greater certainty.” Brown et al. v. Fowler et al., 65 Ohio St., 509.
In The Ashland Mutual Fire Insurance Co. v. Housinger & Norton, 10 Ohio St., 10, this court had under consideration and review a policy of fire insurance, one clause of which provided for the payment of all losses or damages not exceeding the sum insured. There was a subsequent clause in said policy which the company claimed limited its obligation to two-thirds of the loss actually sustained. In construing said policy, this court said: “In the first sentence or provision the company undertakes, unconditionally, to pay all losses or damages not exceeding the sum insured; and the only way of avoiding its obligation is to show that the promise thus clearly and unconditionally expressed is retracted or varied in the succeeding sentence. But it is a rule to so construe an instrument, if practicable, that the *146 whole may stand; ut res magis valeat, quam pereat.
“Nothing but a clear and unambiguous expression in the latter sentence, amounting to a necessity for it, could justify our regarding the subsequent provision in a contract as utterly inconsistent with the preceding provision.”
But it is said, that by the provisions of the fourth clause of said instrument, the parties have themselves clearly evinced their understanding' and intent, that the dividends on the stock should be the only method of payment that could be exacted, and that the plain purpose of this clause was, and is, to exempt the purchasers from any liability to pay out of their own money or means, except upon their “desire” or “option” so to do. The clause reads as follows: “Should said purchasers desire to make payments on said purchase price in addition to the dividends from time to time declared on said stock, they shall have the option of doing so.” While it is obviously true, that the option thus extended to make payments from time to time in addition to the dividends declared, neither creates nor imposes an obligation upon the purchasers to make such additional payments; yet it is equally true, that the giving of the option does not operate to discharge and release the purchasers from such obligation and liability as they assumed under and by virtue of their express agreement to purchase the 360 shares of stock, which J. R. Stewart, in terms, concurrently promised and agreed to sell them.
Among the considerations recognized in law as sufficient to support a contract, is that of mu *147 tual promises, or as it is sometimes expressed, a promise for a promise. In our everyday business relations, many of our most familiar and common contracts depend for their validity upon the application of this principle. And the doctrine is very generally, if not universally, recognized that where there is mutuality of engagement so that each party has the right at once to hold the other to a positive agreement, a sufficient consideration is provided and the contract is binding upon each. What, then, considering all its terms and provisions, is the proper construction and legal effect, of this writing of September 23d, 1899, modified by the endorsement of February 10th, 1900? It is claimed that inasmuch as this writing contains neither express engagement to pay the purchase price of $36,000, nor fixes definitely the time within which the agreement shall be performed and said purchase price be fully paid, that therefore it is wholly uncertain and illusory in its nature, and should not be enforced. As to the first of these propositions it is enough to say, that the agreement of George T. Stewart, W. T. S. Johnson and Lewis N. Gatch to purchase the 360 shares of stock of The Bradford Mill Company, necessarily implies a promise on their part to pay for it. Railroad Co. v. Brown, 26 Ohio . St., 223. As to the suggestion that time of performance is not therein specified, the rule is well settled, that where no time for performance is fixed by the contract itself, the law implies that performance is to take place within a reasonable time, and that the parties so intended and agreed. Lewis v. Tipton, 10 Ohio St., 88; Curtiss v. The City of Waterloo, *148 38 Ia., 266; Griffin v. Ogletree, 114 Ala., 343; Wright v. Maxwell, 9 Ind., 192. The written agreement here in question definitely fixes the amount to be paid, and refers to it throughout as the “purchase price.” Immediately upon the execution of this writing the purchasers were entitled to receive, and did receive, the full beneficial interest in the 360 shares of stock, and the same were thereafter voted in accordance with their wishes and directions; and the dividends thereon amounting to several thousand dollars, were applied as a credit on the purchase price of said stock. We must presume that the parties thereto intended this instrument to have some operation, and it would seem but reasonable that, if as claimed, only a gift of the stock was intended, that then naturally and necessarily, the instrument and transaction would have assumed a very different form. To adopt the construction contended for by the defendants in error would be to import into .the written contract of the parties a condition nowhere found or expressed in the instrument itself, viz.: that if dividends fail, payment of the purchase price would not be exacted — and to thus, by judicial construction, render the instrument frivolous and ineffectual, and defeat rather than sustain it. But the rule is elementary, that if the language of a contract is susceptible of two constructions, one of which will render it valid and give effect to the obligation of the parties, and the other will render it invalid and ineffectual, the former construction must be adopted. Applying the foregoing principles and rules of construction to the contract now under review, *149 necessarily leads to the conclusion that this contract is not wanting either in consideration or mutuality of obligation, and that it .is therefore binding and obligatory upon the parties, and imposes upon the purchasers the obligation to pay the full purchase price of $36,000, “through dividends or otherwise,” but in terms allows them a reasonable time within which to realize this amount from dividends' that may be declared. The following authorities, with more or less direction, bear upon the propositions above considered. Lewis v. Tipton, 10 Ohio St., 88; Railroad Co. v. Brown, 26 Ohio St., 223; Palmer v. Hummer, 10 Kan., 464; Fisher v. Hopkins, 4 Wyo., 379; Carter White Lead Co. v. Kinlin, 47 Neb., 409, 416; Minneapolis Mill Co. v. Goodnow, 40 Minn., 497; Scott v. Lord Ebury, 2 L. R. C. P., 255; Aunez v. Dautel, 19 Wall., 560; Brown v. Rounsavell, 78 Ill., 589 McCartney et al. v. Glassford, 1 Wash., 579; DeRutte et al. v. Muldrow et al., 16 Cal., 505.
In view of the conclusion above reached, it is unnecessary to consider whether the fifth clause of said contract provides a valuable and sufficient consideration, independent of the purchase price agreed to be paid, or the effect, if any, on the rights of the parties, of alleged part performance by the purchasers, in the lifetime of said Jacob R. Stewart.
The further claim is made in this case by counsel for defendants in error, that said contract, if mutually binding upon the parties thereto, is nevertheless wholly incapable of performance by the administrator. We are of opinion, however, that *150 as performance on his part would only require of the administrator that he receive and credit upon said contract the amounts paid, upon the purchase price, through dividends or otherwise, and when fully paid that he transfer and deliver said stock to the persons entitled thereto, that no legal obstacle exists to prevent his full and completé performance of said contract in the due course of administration.

The judgment of the circuit court will be reversed, and the judgment of the court of common pleas will be affirmed.

Shauck, C. J., Price, Summers and Davis, JJ-, concur. .