J. G. WAMACK and J. R. WAMACK, appellants, v. W. C. THOMAS, SILAS A. STUCKEY, R. E. FREY and JAMES PURCELL, respondents.

Springfield Court of Appeals, July 28, 1913.

1. **SALES: Agency: Delivery of Property for Agency Only.** Plaintiffs, the owners and operators of a mining plant, became indebted to a bank. The bank being insistent upon the payment of the indebtedness, $7500, and the agent of the land on which the mining plant was located having served notice that the lease would be forfeited because of failure to operate, plaintiffs told one of the defendants, S., who was an officer of the bank, that they desired to sell the mining plant, placing a price $7500 on it and the property was turned over to S. to "do the best he could with it." S. obtained an agreement from the landowner that he would lease the property to some one to whom S. could sell the mine. The defendants organized a company for the purpose of putting the mine in condition to operate and thereby the better to sell it. The plaintiffs having full knowledge thereof turned the property over to the defendants, who expended money to put same in saleable condition, paid $1000 on a mortgage of $2000, plaintiffs paying the remaining $1000. Defendants took a lease from the landowner in the name of one of their number, and, failing to find a purchaser for the plant, operated it and kept it in condition for sale. They agreed with a third person that if he could sell the property, he should have one-half of all over $12,500 that the mine brought in case of sale, it being agreed that the plaintiffs were to have the first $7500 of the selling price and, the bank was to have its indebtedness paid next. The plaintiffs did not object to these arrangements nor did they demand

a return of the property. *Held*, that the delivery of the property was not a sale to the defendants but a mere agency for the purpose of effecting a sale to some other party, if possible.

2. **APPEAL AND ERROR:** Findings of Fact. Where a law case is tried by the court, the facts, found under proper declarations of law, should not be disturbed by the appellate court.

3. **SALE:** Reasonble Time for Payment: Question of Fact. In a sale of a mining plant for a certain price to be paid upon resale of the property and in case no resale was made then within a reasonable time, what was a reasonable time for a resale of the plant which had ceased to operate and required from $3000 to $4000 to start and put in saleable condition, and a financial panic having occurred soon after possession was given, what was a *reasonable time* was a question of fact to be determined by the triers of the facts.

Appeal from Jasper County Circuit Court.—*Hon. H. L. Bright*, Judge.

Affirmed.

*Frank L. Forlow* for appellants.

(1) Even if this property was sold by the plaintiffs to defendants and delivered to them, to be paid for upon a resale of the property, the defendants were bound to either pay the money, agreed upon, or return the property, whatever might have happened in the meanwhile, and it was the duty of the defendants to have paid the money or returned the property within a reasonable time and the fact that they failed to do so, for more than one whole year next before the filing of the petition in suit, a resale would be presumed. Blow v. Spear, 43 Mo. 496. (2) The transaction between the plaintiffs and defendants was a sale under all of the evidence. The defendants had the right to resell the property at a price and upon terms to suit themselves, and they instead subleased to Marquis, and placed it beyond their power to return to plaintiffs, and had agreed to pay plaintiffs $7500 as an agreed price, and therefore even it if should be found that

they were to resell the property, it was still a sale and that fact did not affect the character of the transaction. Bicking v. Stevens, 69 Mo. App. 168. (3) There being no time for payment fixed by the parties in this suit, the defendants were entitled to a reasonable time in which to pay for the property; and our contention is that when the plaintiffs permitted the defendants to have the use of the mine for over a year, and take out ore, and the use of the mill for all of that time, they waited more then a reasonable time, and were entitled to recover in this cause, even though the defendants had not resold the property. State to the use of Hood v. King, 44 Mo. 238; Smith v. Shell, 82 Mo. 215.

*Howard Gray* for respondents.

(1) The contract between the parties did not, as a matter of law, amount to a sale. Piano Co. v. Williams, 151 S. W. 211. (2) Undoubtedly, the testimony of Stuckey and Frey, to the effect that the property was turned over by the appellants to Stuckey to manage and sell, and when he had collected the purchase money, pay it on certain notes of the appellants' at the bank, required the court to submit to the jury the question of fact as to whether it was a sale. And as the case was not tried before a jury, it was a question of fact for the court, as the rule, is that when different inferences may be drawn from the same testimony the question is for the trier of the facts. Bennett v. Terminal Assn., 145 S. W. 433; Hurst v. Mining Co., 141 S. W. 470; Morgan v. Mining Co., 141 S. W. 735. (3) Even if it should be held that the evidence shows a sale it also shows that the money sued for was not due at the time this suit was commenced. Both of the appellants testified that nothing was to be paid until the property had been sold. Bryant v. Saling, 4 Mo. 522; Peery v. Cooper, 8 Mo. 205; Blow, Admr. v. Spear,

43 Mo. 496; Goodale v. Hoy, 56 Ia. 242, 9 N. W. 130.
(4) The appellants concede that respondents were not
to pay for the property until they had sold it, unless
they delayed selling beyond a reasonable time, but
claim that a year was a reasonable time, as a matter
of law. The respondents deny this, and say that a
reasonable time is ordinarily a question of fact, and that
the trial court would not have been justified in declar-
ing that a year was a reasonable time under the terms
of this contract, when the nature of the property is
considered. Banks v. Stam, 65 Mo. App. 455; Bryant
v. Saling, supra; Peery v. Cooper, supra; Fisher v.
Chadwick, 34 Pac. 899; Althoff v. Transit Co., 204 Mo.
166; Turner v. Snyder, 132 Mo. App. 320. (5) The
appellants contend that the debt became due when the
respondents made a sublease to Marquis. If the trans-
action was a sale, then, certainly the respondents were
entitled to the use of the property and had a right to
make a sublease to it to become void whenever they
sold the property. Peery v. Cooper, supra; Goodale
v. Hoy, supra. There was testimony to the effect
that the sublease was understood and consented to by
appellants.

FARRINGTON, J.—Judgment for defendants in
the trial court and plaintiffs appealed.

Plaintiffs in their petition, filed December 17,
1908, alleged that in October, 1907, they sold to the
defendants a certain concentrating plant and tools
used in connection therewith located on land which they
had leased from the General Lead & Zinc Company,
the consideration for the alleged sale being $7500;
that possession was delivered to the defendants, and
that they have failed and refused to pay the purchase
price. The answer was a general denial.

The facts in the case are as follows: J. G. Wa-
mack and J. R. Wamack, the plaintiffs, are brothers,
and were owners and operators of a mining plant in

Jasper county known as the "Twelve O'clock Mine."
During the summer and fall of 1907, they were falling
behind in a financial way with the mining business and
getting more and more in debt to the Carthage Na-
tional Bank. On several occasions, from June to
October, 1907, the plaintiffs consulted the officers of
the bank with reference to making a sale of the mining
plant, and they had given options and extensions of
options for the sale of the property, and had offered
it for sale several times without success. The bank,
through one of its officers (defendant Silas A. Stuckey)
was insisting upon the plaintiffs paying the money they
owed the bank, amounting to $7500. In October, the
mine was not being operated, and, according to the
testimony of one of the plaintiffs, the agent for the
landowner had notified them that the lease was for-
feited or that he was going to forfeit it. With their
property in this condition, and the bank demanding its
money, the plaintiffs went to defendant Stuckey and
told him they desired to sell the mining plant and
would place a price on it of $7500. They testified that
Stuckey told them he thought he would be able to sell
the mine for this price, and they admit they turned the
property over to Stuckey in that condition of affairs to
do the best he could with it. Stuckey immediately
saw the agent of the landowner and found that the
latter considered that plaintiffs had forfeited their
lease, and the agent told Stuckey that he would not let
the plaintiffs operate under a lease any longer, nor
would he give them a new lease, but, upon being called
into consultation with one of the plaintiffs who had
charge of this part of the business, agreed that the
owner of the land would make a lease to some one that
the mine could be sold to. The defendant Stuckey and
the plaintiffs understood and knew that the mine would
stand a better chance for sale if the business was put
on its feet and started as a going concern; and plain-
tiffs, with full knowledge that Stuckey was organizing

a company for the purpose of putting the mine in condition to operate, and thereby sell it, turned the property over to the defendants, and the defendants, taking charge of the business, called themselves the ' 'Twelve O'clock Mining Company.'' There is evidence that many times after defendants took charge of the mine, plaintiffs were told by the defendants everything concerning the way it was being handled. These defendants to whom the property had been delivered to put into saleable condition and sell, commenced spending their money on the mine and operating it. It was not a money-maker for them, as the undisputed testimony is that they put into the mine $4000 of their money in fixing it up and operating it. Some time after they had possession of this mine, which plaintiffs claim to have sold them for $7500 in October, 1907, and after some of the defendant's money had been placed in it in fixing up and getting it in operation, a notice appeared upon the mill that it would be sold under a chattel mortgage which had been given some time before by the plaintiffs and which was a valid, subsisting lien against the property. This notice, tacked upon the mill, according to the undisputed evidence was the first the defendants knew of any mortgage being on the mill which the plaintiffs claim to have sold them. Defendants immediately called on the plaintiffs for this money, and plaintiffs were unable at that time to raise the $2000 but did put up $1000 to pay off the mortgage on the mill which they claim to have sold; and the other $1000 was advanced by defendant W. C. Thomas. Plaintiffs testify that Thomas said when he put up this money that he would allow that to be added to the sale price. The defendants took a lease from the landowner in the name of one of their number (Thomas), and after failing to make any money on it and being unable to consummate a sale, counting the money they had put together with the $7500 that plaintiffs agreed to take when the mill was

sold, had $12,500 represented by this mining plant. In the meantime, the panic of 1907 came on and the defendants were unable to make a sale. However, they did keep on operating the mine and putting it in shape for sale, according to their testimony, and finally, with this same end in view, they entered into an agreement with one Marquis, a miner, whereby he was to operate the mine for a period of sixty days or until the mine was sold and they were to give him an additional interest by agreeing that he should have one-half of all over $12,500 that the mine brought in case a purchaser could be found. Defendants explained to him, as the evidence shows, that they (the defendants) were to be reimbursed for their expenditures, that the Wamacks were to have the first $7500 of the selling price, and then any sum remaining would be divided with Marquis, agreeing that they would place the selling price at $15,000. The mine was not sold although there is substantial testimony that Stuckey and the other defendants were doing all they could to make a sale that would let all parties out and pay the debt of the plaintiffs to the Carthage National Bank.

It is evident to our minds, from this statement of the facts, that there was no *sale* of this property from the plaintiffs to the defendants in October, 1907; nor was there contemplated at that time by any of the parties any sale except such as the defendants might make to some purchaser if they could find one. The property was delivered to them solely for the purpose of getting it into saleable condition and finding a purchaser. Everything that Stuckey did, if the evidence of this record is to be believed, from the time the plaintiffs delivered the property to him and the other defendants, was to put the plant in shape for sale and make attempts to sell it according to the arrangement that was originally entered into between the parties. The evidence of the defendants is that they consulted and advised with the plaintiffs concerning what they

were doing, and to say the least, the plaintiffs stood by without objection or complaint and saw the defendants spending their money in putting the mine in shape to sell. Defendants' sublease and contract with Marquis was merely an additional agency in keeping the mine going, and a carrying out of the original agreement to put it in shape and sell it, and was in no way conflicting with or in derogation of the arrangement originally made. The record is absolutely barren of any complaint or any demand from the plaintiffs for the return of the property and their silence along this line would indicate that the method and plan and acts of the defendants met with their approval. The petition, the evidence introduced by the plaintiffs, and their declarations of law, discloses that their theory was that there was an outright sale of this property to the defendants in October, 1907, but their evidence utterly fails to uphold this theory. They seek in this court, according to the third point in their brief, to charge a sale because of the sublease defendants made to Marquis—that is, a conversion of the property and a waiver of the tort by them and suit on the theory of a sale—but this is clearly an afterthought, because the two declarations of law prepared by plaintiffs, one of which was given and the other refused, require the court to find that the sale was made in October, 1907, whereas all the evidence shows that Marquis was never connected with the transaction until some time in December, 1907.

Such a delivery as was made in this case cannot amount to a sale. [Packard Piano Co. v. Williams, 151 S. W. (Mo. App.) 211.]

This was a law case, tried by the court, and the facts were found in favor of the defendants under proper declarations of law, and should therefore not be disturbed by the appellate court.

The appellants should fail for the further reason that even conceding there was a sale made in October, 1907, for $7500, that price to be paid upon resale of the

property and in case no resale was made then the purchase price to be paid within a reasonable time, what was a reasonable time for the resale of the mining plant, which had ceased operations, requiring from three thousand to four thousand dollars to start and put in saleable condition, and in view of the fact that a financial panic came on within a short time after possession was given, all made a question of fact to be determined by the trier of the facts. There was substantial testimony to justify the finding and judgment in this case on this theory. [See, Burks v. Stam, 65 Mo. App. 455, Bryant v. Saling, 4 Mo. 522; Peery v. Cooper, 8 Mo. 205; Fisher v. Chadwick, 34 Pac. 899; Althoff v. Transit Co., 204 Mo. 156, 102 S. W. 642; Turner v. Snyder, 132 Mo. App. 320, 111 S. W. 858.]

Entertaining these views, it is apparent that the judgment should be affirmed and it is so ordered. *Sturgis, J.*, concurs. *Robertson, P. J.*, concurs except as to what is said in regard to the plaintiffs in this court claiming that they waived the alleged conversion by reason of the lease to Marquis and elected to sue on the theory of a sale.