(35 Misc. Rep. 435.)

BRADY v. EDWARDS et al.

(Supreme Court, Special Term, New York County. July, 1901.)

1. EQUITY—DECISION—OPINION.
    Where in a suit in equity a decision is rendered in favor of the plaintiff, the court is not required to set up in the decision the reason why defenses were not sustained, nor write an opinion in the case.

2. CONTRACT—RESCISSION.
    Where plaintiff and defendant had entered into a contract for the production of a play, defendant could not rescind the same because of

alleged nonperformance by plaintiff of his agreement to furnish certain moneys towards the expenses of the production, and retain the play, which had been turned over to him by plaintiff.

3. FRAUD—EVIDENCE—EXPRESSION OF OPINION.

In an action under a contract for the production of a play, the evidence is insufficient to sustain fraud on the part of plaintiff, because he stated in good faith that he had the exclusive right to produce such play in England, when in fact the play was public property, such statement being merely an expression of opinion upon a difficult question of law.

Action by William A. Brady against George Edwards and Albert Southerland. Verdict for plaintiff. Settlement of decision and judgment postponed.

Dittenhoefer, Gerber & James (David Gerber, of counsel), for plaintiff.

Mitchell L. Erlanger, for defendants.

ANDREWS, J. Upon the settlement of the decision to be signed, and of the judgment to be entered in this case, the defendant's attorney has filed a memorandum in which he complains that the grounds upon which the case was decided against his client were not stated in the memorandum opinion filed by me; that he therefore does not know what such grounds were, and that for these reasons he cannot properly protect the interests of his client upon such settlement; and that the decision submitted by plaintiff's attorneys merely recites the facts set forth in the complaint, and not the grounds upon which the decision was rendered by me. In his complaint the plaintiff alleged that he was the owner of a certain play, and that he formed a partnership with the defendant to produce it on certain terms; that he delivered the play to the defendant, who had produced the same pursuant to such contract, receiving large profits; that the plaintiff had demanded an accounting from the defendant, which had been refused. All these allegations of the complaint were either admitted by the answer or proved on the trial, and the plaintiff, as a matter of course, was thereupon entitled to a decision that the defendant account to him, unless some of the defenses set up in the answer were established. It was decided by me that none of such defenses was established, and that the plaintiff was entitled to judgment as prayed for in the complaint; and the plaintiff's attorney has submitted a decision in which the grounds upon which the case was decided in his favor are very fully stated. It sets forth that certain facts are found by me, and, as those are the facts set up in the complaint, I know of no way in which they could be properly and correctly stated, except by using the language of the complaint itself. In this respect the usual practice in the drawing of decisions is followed. There is no statute, nor any practice, which, so far as I am aware, requires or authorizes the insertion, in a decision in favor of a successful plaintiff, of the reasons why or grounds upon which defenses set up in the answer are not sustained. The law and practice in this respect are so clear and well settled that I am led to conjecture that the real supposed grievance of the defendant's attorney is that an opinion was not handed down setting forth such

reasons, and answering the arguments presented by the defendant's attorney to sustain such defenses. There is no law which requires the judge who decides an equity action to write an opinion in any case. Where the decision sustains any of the defenses pleaded, and the complaint is dismissed, the grounds of the decision are, of course, to be inserted in the written decision itself; and it is usual in such cases to write an opinion, long or short, as the case may require, apprising the plaintiff of the reasons why he is turned out of court. Where defenses are not sustained, and the action is decided in favor of the plaintiff, sometimes opinions are written, and sometimes they are not, and in some of such cases they are not written because it is supposed that the defendants would prefer that they should not be; and when I filed the brief memorandum decision in this case I considered that this was one of that class of cases. However, it is not difficult to state such reasons, and, as defendant's attorney seems to feel aggrieved that this was not done, I briefly do so now, as well as I can from my recollection of the case.

1. The defendant set up the following defense: "That plaintiff refused to pay his proportion of the expenses to produce the play, and refused to live up to his agreement, and that the contract was, for such a refusal, rescinded." This was the only reason given by the defendant at the time of his attempted rescission of the contract which he admits he made with the plaintiff. The other defenses set up are obviously afterthoughts of the defendant or his attorney. This defense was overruled because, in my opinion, it was not sustained by the evidence. The letters and telegrams which passed between plaintiff and defendant, and other evidence, show that the defendant did not attempt to rescind the contract because the plaintiff would not contribute his share of the necessary expenses of producing the play, but because the plaintiff would not comply with defendant's demand that the plaintiff should deposit moneys enough not only to cover his share of the expense of producing the play, but also a sufficient amount to cover his share of possible losses that might occur if the play was not successful. This was a demand which the defendant had no right to make under the terms of the contract between himself and the plaintiff, and I am compelled to say that, in my opinion, such letters and telegrams show a determination on the part of the defendant to make, and persist in making, a demand which he well knew he had no right to make, in order that he might find a pretext for rescinding the contract. Moreover, it is elementary law that in a case like this the defendant could not rescind the contract without returning what he had received from the plaintiff. He had received the play, and he retained and used it, which he had no right to do, even if he had just grounds for rescinding the contract. His action in regard to the demand which he made, and his attempted rescission of the contract, seem to me to have been unfair and unlawful.

2. The defendant also set up the following defense: "That plaintiff falsely represented that he possessed exclusive rights to the

play in England, whereas it was public property, and consequently the contract was void because of the fraud in its inception." This seems to have been a somewhat late discovery of the defendant or his attorney, for no such reason was given to the plaintiff when the defendant informed the plaintiff that he had rescinded the contract; and, in my opinion, there is no evidence tending to sustain this defense. The plaintiff had bought the play, and the transfer to him purported to give him the exclusive right to produce it in · England, though the defendant has made a laborious effort to prove that under the laws of England the plaintiff did not acquire or have such right. Assuming, but not deciding, that this effort has been successful, there is no evidence tending to show that plaintiff knew or had any reason to suppose that he did not possess such right. When fraud is charged, as in this case, it is essential— with some exceptions, of which this is not one—to prove an intent to defraud. The plaintiff merely stated what he believed, and had good reason to believe,—that he had such right; and such statement, at the most, if the plaintiff had any thought about the matter, was merely an expression of his opinion upon what now seems to be quite a difficult question of law. If at the time the defendant undertook to rescind the contract he knew or believed that the plaintiff did not have the right in question, why did he not so inform the plaintiff, instead of giving another reason for such rescission, retaining the play in his possession, and using it, as he did, upon the pretense that the plaintiff would not contribute his · share of the expenses of producing it? Moreover, if he was justified in attempting to rescind the contract upon this ground, it was clearly his duty, instead of retaining and appropriating the play to his own use, to return the copy of the play which had been delivered to him to the plaintiff; but it appears that instead of so · doing he went on, and after making some changes in the play, and changing its title, produced it in London and elsewhere, and, by his own admission, received between £9,000 and £10,000 gross receipts upon such production; and, even if it be true that the plaintiff did not have the exclusive right to produce the play in England, it does not appear that the defendant was in any way injured because of that fact.

3. Another defense set up in the answer was the following: "That the contract was void for want and failure of consideration, and was rescinded for that reason." No such reason was given by the plaintiff at the time he attempted to rescind the contract. If by "want of consideration" is meant that the consideration for the contract failed because, as is claimed, the plaintiff did not have the exclusive right to produce the play in England, the reason for overruling this defense has been already partly stated; and in addition it is clear that, if there was a failure of consideration, for that reason the defendant was bound to return the play to the plaintiff, and he could not rescind without so doing. If it is meant that the plaintiff had no title to the play because Du Suchet, the author of the play, had assigned the play and all rights under it to his wife before he assigned the same to Smyth & Rice, the reply·

to such a proposition is that the testimony of Du Suchet in this respect is not entitled to any credit. He was called as a witness for the defendant on the trial, and did testify that he had made such assignment to his wife. He, however, admitted that he had made the assignment afterwards to Smyth & Rice, and that he had received from them payments according to the terms of such assignment. He was asked if the assignment to his wife was in writing, and he said it was; and also was asked if he could produce it, and he said he could. The next day of the trial he appeared and stated that this assignment could not be found. If it was true that he had made such prior assignment to his wife, he convicted himself of a gross fraud upon Smyth & Rice, and his testimony was thereby wholly discredited. Besides, he admitted that he had received payments under the contract from Smyth & Rice, and had turned over the money so received to his wife. Under the circumstances, it must, therefore, be held that, even if the assignment to his wife was made, the subsequent assignment to Rice was ratified by her, as she certainly must have known that the moneys which she so received were payments under a subsequent assignment to Smyth & Rice or some one else.

4. Another defense set up is as follows: "That 'My Friend from India' was never produced, but a new play, 'My Friend the Prince.'" Testimony was introduced showing that, with the consent of the plaintiff, before the attempted rescission of the contract, Mr. McCarthy was employed to change the play in some respects so as to adapt it to English audiences. This change was made, and the title was also changed from "My Friend from India" to "My Friend the Prince," and it was produced by the defendant under the latter title; but the changes made in the play and the changes in the title were not changes of such a substantial character as to deprive the plaintiff of his rights under the contract with the defendant.

The foregoing is a brief statement, based upon my recollection of the evidence given upon the trial, of the reasons why the defenses set up in the answer were not sustained. It would be easy to elaborate such statement, but I see no occasion for so doing. When the case was decided I assumed that defendant's attorney had seen and was familiar with the brief submitted by the plaintiff's attorney, and I therefore thought it was sufficient to refer him to that brief for a full and complete statement of the argument which, in my judgment, refuted those presented by him in support of such defenses. In his memorandum, now presented, the defendant's attorney states that he has never seen that brief. I therefore suggest and request that the plaintiff's attorney furnish the defendant's attorney with a copy of such brief, and I will postpone the settlement of the decision and judgment until the defendant's attorney has had a reasonable opportunity to prepare and submit further proposed amendments of the same, if he wishes to do so.

Ordered accordingly.