## Ripy Brothers Distilling Company v. Lillard.

(Decided October 9, 1912.)

### Appeal from Anderson Circuit Court.

1. Contracts—Made to Settle Disputed Claim—Consideration.—A contract made to settle a disputed claim asserted in good faith after the parties had taken legal counsel and each fully understood the facts, is not without consideration, although the claim was one which would not have sustained a recovery, if suit had been brought.

2. Contracts—Previous Contract—Court Cannot Go Into Rights of Parties Under.—In a suit on a contract to recover the balance of the consideration where the defendant by his counterclaim simply seeks to recover what he had paid under the contract on the ground that the contract was invalid, the court cannot go into the rights of the parties under a previous contract, the contract sued on having been made in settlement and compromise of these matters.

LILLARD CARTER and WILLIS, TODD & BOND for appellant.

F. R. FELAND for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON— Affirming.

On July 5, 1899, W. F. Lillard, who owned a farm containing about four hundred and seventy-three acres of land, near Tyrone, Anderson County, Kentucky, conveyed to T. B. Ripy, for a distillery site, about twenty-seven acres of it, the deed containing the following restriction:

"It is agreed between the parties and is a part of the consideration for the conveyance of the aforesaid land

that the party of the second part shall not feed any stock slop on this land.''

T. B. Ripy died soon afterwards and the distillery property passed into the hands of The Ripy Brothers Distilling Company. In the year 1905 it owned, also, a tract of land adjacent to the distillery premises and hauled two loads of lumber there for the purpose of erecting cattle pens in which to feed slop from this distillery. Lillard then saw the manager of the distillery and a parol agreement was made between them to the effect that the cattle pens might be built on the twenty-seven acres and the slop fed there. Lillard notified the hands of the agreement and the lumber was hauled over to the other tract. The company built the cattle pens there at an expense of about two thousand dollars. Lillard knew what was going on and helped to haul some of the lumber. After the cattle pens were constructed cattle were fed there with slop in the distilling seasons of 1905-06, 1906-07, 1907-08, 1908-09, and 1909-10. But the verbal agreement was never reduced to writing. An attempt was made to reduce it to writing, in the spring after it was made, but the parties then differed as to what the contract was and the distilling company went on slopping cattle as though the contract had been reduced to writing, Lillard apparently interposing no objection, at the time. In August, 1910, he, by his attorney, notified them that they must not slop any more cattle on the distillery premises. This notice was followed up by several personal interviews between him and the Ripys. They were anxious to slop cattle on the distillery premises and so finally the following written contract was made:

''That the party of the first part has agreed and hereby agrees to bind himself, his heirs and assigns to allow and permit the parties of the second part, or any of them and any person or persons to whom they have sold or leased their slop or slopping privileges or any person or persons to whom they may sell or lease said slop and the rights and privileges of feeding same to feed the slop from the distillery of the parties of the second part to cattle on the distillery premises which are situated on the north side of the Lawrenceburg turnpike in Anderson County, Kentucky, during the distilling season of 1910 and 1911.

"And the party of the first part, for himself, heirs and assigns hereby waives and relinquishes all damage that may result from the feeding of said slop as above provided for and any and all legal remedies against the parties of the second part.

"In consideration of the premises the parties of the second part have sold and hereby convey and transfer to the party of the first part all the lumber and iron in that certain building known as "Warehouse C," purchased by Ripy from the Kentucky Distilleries and Warehouse Company, which is situated on a certain tract of land in Anderson County, Kentucky, known as 'The Cedar Brook Incline,' premises, near Tyrone, Kentucky, and the Kentucky River, which lumber and iron must be removed by the party of the first part, from said premises on or before June 30, 1911.

"And, as further consideration for the agreements of the party of the first part, the parties of the second part agreed to deliver to him at the Cedar Brook Incline premises on or before June 30, 1911, twenty-five thousand feet of lumber from one or more of the warehouses situated on said Cedar Brook Incline premises and belonging to the parties of the second part which lumber shall be in quality on an average with the lumber in the warehouse or warehouses from which it is taken. Said lumber shall be taken from the warehouse or warehouses by the party of the first part under the direction of the parties of the second part.

"Witness our hands this day and year first above written.

> "RIPY BROS. DISTILLING CO.,
> "By FOREST RIPY,
> "RIPY BROTHERS,
> "JAS. C. RIPY,
> "EZRA F. RIPY,
> "W. F. LILLARD,
> "LOUISE P. LILLARD."

The distilling company delivered a part of the lumber and declined to deliver the remainder. Thereupon, Lillard brought this suit to recover upon the written contract two hundred and fifty dollars, the value of the lumber which had not been delivered. The distilling company filed an answer in three paragraphs. In the first paragraph it pleaded the facts we have stated, alleging

that the written contract above quoted was without consideration and was obtained by deceit, covin and fraud. In the second paragraph it pleaded the same facts, alleging that Ripy was estopped thereby to set up or rely upon the restriction contained in the deed and that the written contract above quoted was without consideration and obtained by fraud. In the third paragraph which was made a counterclaim it pleaded the same facts alleging that pursuant to the contract it had delivered to Ripy a part of the lumber specified in it of the value of five hundred ($500) dollars and it prayed judgment against him for this sum. A reply was filed controverting the allegations of the answer. Proof was taken and on final hearing the circuit court entered a judgment in favor of the plaintiff for two hundred and fifty dollars, with costs. The distilling company appeals.

The proof shows an entire want of fraud, covin or deceit. The contract which was sued on was made after both parties had taken counsel with attorneys and had fully discussed with each other their respective claims. The distilling company apprehended a large loss of money if it did not have the right to feed the slop to cattle and it feared that unless some arrangement was made Lillard would, by legal proceedings, stop them from using the slop in this way, but this did not constitute duress. (Edwards v. Handley, Hardin, 611; Hazelrigg v. Donaldson, 2 Met., 445; 5 Lawson's Rights and Remedies, section 2365.)

The contract was deliberately made. There was no misunderstanding or misrepresentation. Each of the parties understood, perfectly, the facts and if it be true that the defendant made the contract to avoid a loss which it apprehended it would otherwise sustain, it cannot defeat a recovery on the contract by showing that Lillard's demands were without foundation and that if a litigation had followed it could have defeated him thereon. The defendant chose to make the contract then rather than risk the litigation and the contract being deliberately and intelligently made the defendant cannot now escape its obligation.

What were the rights of the parties as things stood, before the written contract above quoted was entered into, is not a question presented by this record. The plaintiff's petition seeks a recovery upon the written contract. The defendant's counterclaim seeks a re-

covery of the five hundred dollars for the lumber delivered under the contract before the defendant declined to carry it out in full. No other question is presented by the record except the validity of that contract. The contract being valid the circuit court properly entered a judgment in favor of the plaintiff for the amount sued for and properly dismissed the defendant's counter-claim.

Judgment affirmed.