**McGARY v. CAMPBELL et al. (No. 848.)***

(Court of Civil Appeals of Texas. Beaumont. Oct. 28, 1922. Rehearing Denied Nov. 15, 1922.)

**1. Trial ⚖➡139(1)—Error to instruct verdict when evidence raises issue of fact.**

Where the evidence is sufficient to raise an issue of fact in a jury trial, it is error to instruct a verdict.

**2. Appeal and error ⚖➡742(1)—Proposition, so far as it alleges fraud, not entitled to consideration when assignment of error does not raise that question.**

A proposition asserting that the court erred in peremptorily instructing a verdict against plaintiff because he had shown by the evidence that he acquired an interest in lands in controversy, and had offered evidence to prove that instruments subsequently executed by him were without consideration, and induced by fraud, is not entitled to consideration so far as it sets up the question of fraud, where this question is not raised by the assignment of error on which it is based.

**3. Mines and minerals ⚖➡85—Under agreement for purchase of oil lands with money of one of the parties to be repaid, parties held to acquire title as joint owners.**

Where one furnished the money for the purchase of oil lands under an agreement with others that after he was repaid from sales or leases or otherwise the land was to be owned by him and the others in certain proportions, the others each had an interest in the land, and on repayment of the money title to the land remaining would have vested in the parties as joint owners.

**4. Contracts ⚖➡212(2)—Reasonable time allowed for performance when time not fixed.**

When no time is fixed for performance of a contract, the law reads into the contract a reasonable time.

**5. Contracts ⚖➡176(10)—When reasonable time a question for the court, and when a question of fact, stated.**

The question of what is a reasonable time for performance of a contract not fixing the time is one of law for the court, when it de-

pends upon the construction of a written contract or upon undisputed facts, and is a question of fact for the jury, when it depends upon facts extrinsic to the contract and which are matters in dispute.

**6. Mines and minerals ⚖➡85—Party furnishing money for purchase of oil lands under agreement that he was to be first repaid entitled to repayment within reasonable time.**

Where one L. furnished money to purchase oil lands, under an agreement with others that he was to be repaid from sales, leases, or otherwise, and on repayment the lands were to be owned in certain proportions, he was entitled to repayment within a reasonable time, and was not required to wait indefinitely to enable the others to sell or develop the land at a profit.

**7. Fraud ⚖➡11(1)—Representation law would read time limit into contract held an opinion not supporting charge of fraud.**

Where L. furnished the money for the purchase of oil lands under an agreement with plaintiff and defendants that, when he was repaid from sales, leases, etc., the lands were to be owned in certain proportions, the representation by one of the defendants to plaintiff that the law would read into the contract a time limit for repayment of L., after which he could sue for possession of the land, was but the expression of an opinion as to the law on a state of facts equally known to both, and not a representation that could be made the basis of a charge of fraud in inducing a new agreement between the parties.

**8. Attorney and client ⚖➡123(1)—Parties jointly locating oil lands held not to stand in fiduciary relation so as to invalidate new agreement.**

Where plaintiff and defendant agreed to unite in locating oil lands, and, after they had found desirable lands, defendant induced L. to furnish the money for the purchase of the lands, under an agreement that he should be repaid and the lands then owned in certain proportions, and L. thereafter became insistent upon repayment, as a result of which plaintiff and defendant clashed and almost came to blows, defendant, though an attorney, stood in no relation of trust and confidence to plaintiff, which would invalidate a new agreement between the parties, which plaintiff claimed he was induced by defendant to make.

**9. Mines and minerals ⚖➡85—New contract between parties who had purchased oil lands with money furnished by one of them not without consideration.**

Where L. furnished the money for the purchase of oil lands under an agreement with plaintiff and defendants whereby he was to be repaid from sales, leases, etc., and the title was then to be held in certain proportions, and nearly three years thereafter, when L. was insistent upon a time limit being fixed, a new agreement was made placing title in one of the defendants in trust, extending the arrangement for nearly three years more, and providing that if L. had not been repaid the lands should be conveyed to him unless certain payments were made to extend the time, the new contract *held* not without consideration, especially where

---

⚖➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Writ of error dismissed for want of jurisdiction January 10, 1923.

plaintiff's interest was increased thereby from one-sixth to one-fifth.

**10. Contracts ⊚⇒50—Valuable consideration may consist of right, profit, or benefit or a forbearance or responsibility suffered or undertaken.**

Valuable consideration may consist of some right, profit, or benefit accruing to one party, or forbearance, loss, or responsibility suffered or undertaken by the other.

**11. Contracts ⊚⇒50—Benefit to one party and detriment to another sufficient consideration.**

There can be no question of the sufficiency of consideration, where there is a benefit to one party and a detriment to the other.

**12. Mines and minerals ⊚⇒85—Quitclaim deeds executed by persons whose interests had ceased under contract held unnecessary, and consideration immaterial.**

Where L. furnished the money for the purchase of oil lands, under agreement with plaintiffs and defendants providing for repayment and ownership of the lands in certain proportions, and thereafter a new agreement, providing that if L. was not repaid by a certain time, a defendant in whom the legal title was vested should convey to L., unless the arrangement was extended by the making of certain payments, and that all rights and interests of the other parties should cease, and, L. not having been repaid, such defendant conveyed the land to him and contracted to repurchase an undivided interest therein, quitclaim deeds executed by plaintiff and another party merely acknowledged facts already in existence, and were unnecessary, and it was immaterial whether they were supported by a consideration.

**13. Mines and minerals ⊚⇒85—Quitclaim deeds executed by parties to contract, whose interests ceased, held to import consideration.**

Where L. furnished the money for the purchase of oil lands, under an agreement with plaintiff and defendants, and by a subsequent agreement it was provided that if he was not repaid by a certain date the lands should be conveyed to him and the interests of the other parties should cease, unless certain payments were made to extend the contract, and the holder of the legal title did convey to L. and contracted to purchase from him an undivided interest, quitclaim deeds executed by plaintiff and another party giving record confirmation to what had been done with their knowledge and consent, conclusively imported a consideration.

**14. Mines and minerals ⊚⇒85—Quitclaim deeds held supported by consideration, and grantors estopped to deny consideration by accepting contract.**

Where a contract between parties interested in oil lands, one of whom had furnished all the money for their purchase, provided for conveyance to him unless he was repaid by a certain date, and the defendant holding the legal title did convey to him and contracted to purchase an undivided interest, and voluntarily tendered to plaintiff and another party, an agreement permitting them to participate in his interest on certain conditions, quitclaim deeds executed by them were supported by a sufficient consideration, and, having accepted such contract, they could not be heard to question the consideration.

Appeal from District Court, Harris County; W. E. Monteith, Judge.

Action by A. McGary against J. W. Campbell and others. There was a judgment finding defendant Clark C. Wren had no interest in the subject-matter, of the suit against plaintiff and in favor of defendants J. W. Campbell and the Texas Company on plaintiff's suit, and in favor of defendant Campbell against plaintiff on a cross-bill, and plaintiff appeals. Affirmed.

Thos. H. Ball and Huggins, Kayser & Liddell, all of Houston, for appellant.

Lee, Lomax, Wren & Smith, of Fort Worth, and Ross & Wood, and John H. Crooker, all of Houston, for appellees.

O'QUINN, J. A. McGary sued J. W. Campbell, Clark C. Wren, and the Texas Company in the district court of Harris county, Tex., for a one-fourth (or at least a one-fifth), interest in certain oil lands described in plaintiff's petition, located in the oil fields at West Columbia, and for an accounting for the oil produced therefrom.

Defendant J. W. Campbell answered, and also set up a cross-action against plaintiff, McGary, seeking to be quieted in his title to said lands. Defendant Wren answered, adopting the facts as pleaded by defendant Campbell, and disclaiming any interest in the lands in controversy. Defendant Texas Company answered by general denial and plea of not guilty.

The case was tried before a jury, but after the evidence was all in for both sides, the court instructed the jury to return a verdict finding that the defendant Wren had no interest in the subject-matter of the suit; and against the plaintiff, McGary; and in favor of the defendants Campbell and the Texas Company upon plaintiff's suit; and in favor of defendant Campbell against plaintiff, McGary, upon the cross-bill of said defendant Campbell—which was accordingly done, and judgment rendered thereon, from which judgment plaintiff appealed.

The record, comprising the transcript, statement of facts, and briefs, contains 950 pages of printed and typewritten matter.

Briefly, the record reflects the following: During the summer of 1907, plaintiff and defendant Campbell, residents of the city of Houston, Tex., agreed that for their mutual benefit they would make a systematic effort to locate lands having prospective oil value, and that during the fall and winter months of that year they made trips to various territory contiguous to the city of Houston in search of such lands. In the spring of 1908

---

⊚⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

they went to what was known as West Columbia, in Brazoria county, Tex., for the purpose of investigating conditions and prospects there, efforts having been made to develop certain lands there for oil, and while there inspected a 75-acre tract owned by one W. F. Arnold. While there they saw gas coming out of a water well that had been bored for oil, and discussed the advisability of purchasing some acreage, but Campbell, who already had some money invested in land in that locality and out of which he had failed to realize anything, advised that they do not, themselves, invest, but that they get some capitalist interested in the proposition, and said that he had a friend in Galveston, Tex., J. C. League, who was wealthy, and who, he believed, would put up the money to buy the land and allow them (plaintiff and Campbell) a one-half interest in same, including all mineral rights and profits, after repaying to said League all the money advanced by him for the purchase of said land, with interest thereon. Some time about Christmas, 1908, they went to see League, and effected the following agreement with him, to wit:

"State of Texas, County of Harris.

"Whereas, the undersigned, A. McGary, J. W. Campbell, and Clark C. Wren, all of said Harris county, have reached an understanding and agreement with J. C. League of Galveston county, Tex., the general purport of which is that the said Harris county parties are to give so much of their time and services as may be necessary to the acquiring and handling of oil lands and leases, and the said League is to finance acceptable trades, and, in pursuance thereof, it is desired to purchase all or so much as possible of a certain tract of land lying in Brazoria county, Tex., at or near the point of active development in an oil prospect known as the West Columbia oil field, said tract containing approximately 75 acres, and being the tract of land upon which——Arnold now resides and generally known as the Arnold tract: This instrument is to evidence: That the said A. McGary, J. W. Campbell, and Clark C. Wren are hereby authorized and empowered to purchase, for cash, all, or so much of said tract of land as can be bought, at a price not exceeding two hundred ($200.00) dollars per acre, the deed to same to be taken in the name of A. McGary.

"The said League agrees and binds himself to furnish, promptly whenever called upon so to do, the necessary cash to buy said land.

"When the said land is purchased, the said McGary shall hold the same in his name until such time as it is, by the parties hereto, deemed expedient to convey the legal title to some other, in trust, upon the following terms and conditions, to wit:

"The equitable title to the same shall be absolutely in the said J. C. League, until such time as he shall have been repaid, from the said land, all of the cash advanced by him and eight (8%) per centum per annum on the whole amount from the date of its advancement until it is repaid.

"If at any time, by a sale of any part of said land, the said League shall be so repaid, the balance remaining of said land shall be thereafter owned as follows: Three-sixths ($3/6$) thereof by said J. C. League, and an undivided one-sixth ($1/6$) thereof by each of said Harris county parties.

"If at any time, the said land, or any part thereof, is leased for oil or gas development, it being understood and agreed that no such lease is to be made unless it is agreed upon by all the parties hereto, the said repayment, or so much thereof as may be then still due, shall be made to the said League out of the first cash realized upon said land, either as bonus or royalties, and, after such repayment, the title to the land leased, and the right to royalties under the lease, shall be owned in the following proportions: Three-sixths ($3/6$) by the said League and one-sixth ($1/6$) thereof by each of said Harris county parties.

"If a sale of all of said land is made before such repayment from sale or lease of a part thereof, of the proceeds, said League agrees to pay to the said Harris county parties one-half ($1/2$) of the balance remaining, after repayment to him as aforesaid.

"A majority interest shall prevail in the sale and disposition of said property.

"Witness our hands in triplicate originals, either of which shall have force and effect as an original, this the 21st day of December, 1908.          [Signed]          J. C. League,
                              "J. W. Campbell,
                              "A. McGary,
                              "Clark C. Wren."

In pursuance of this contract, McGary purchased from Arnold 70 acres of the 75-acre tract, taking the deed in his name. By mutual consent and understanding of all of the parties to said contract, it was deemed advisable to purchase other tracts of land in that vicinity, and, in accordance with the terms of said contract, plaintiff purchased one tract of 5.35 acres, one of 25 acres, and one of 113.36 acres, title to each and all being taken in plaintiff's name, and paid for out of money advanced by League. Before the understanding with League had been perfected, at the suggestion of Campbell his law partner, Clark C. Wren, was taken into the venture, he to receive one-tenth in the one-half that was to belong to plaintiff and Campbell, but in drawing up the agreement and contract between League and the Houston parties, the interest of Wren was stated at one-sixth, making his share the same as that of plaintiff and Campbell under the contract with League.

As early as January 6, 1909, League began to insist that some time limit should be set for the working out of the sale, lease, or development of said lands, and that he should not have to carry the land for any great length of time, and that if, after a reasonable time, the land could not be sold, or no development for oil had, then that the other parties should either take over the land and pay him his money back, with interest, or that he should have the right to sell the land and pay himself out of the proceeds of the

sale. The record contains much correspondence between League and Campbell, covering a period of from 1909 to 1912, in which League is insisting that some more definite arrangement and understanding be had, and a time limit fixed for the working out of the proposition, Campbell all the time prolonging and arguing against such action. At the demand of League, on April 20, 1912, a new agreement was had—McGary conveyed all the lands to Campbell in trust, and on the same date League, on the one side, and the plaintiff, McGary, Campbell and Wren on the other, made and entered into a new contract, as follows:

"The State of Texas, County of Galveston.

"Whereas, by a certain deed of even date herewith, A. McGary, of Harris county, Texas, conveyed to J. W. Campbell, as trustee, also of Harris county, Texas, certain four tracts of land situated in Brazoria county, Texas, near West Columbia, described as follows to wit: [Here follows field notes of said four acres of land]; and

"Whereas, J. C. League, of Galveston county, Texas, advanced and paid all and the entire purchase money for said lands at the time same were purchased, and deeds taken therefor in the name of said A. McGary, a statement of said advances of money being as follows, to wit:

| | | |
|---|---|---|
| Dec. 24, 1908. | Cash advanced | $ 1,000 00 |
| Dec. 30, 1908. | Cash advanced | 7,750 00 |
| Jan. 8, 1909. | Cash advanced | 30 00 |
| Jan. 9, 1909. | Cash advanced | 60 |
| Jan. 13, 1909. | Cash advanced | 2,500 00 |
| Amount | | $11,280 60 |
| June 6, 1909. | Cash refunded to J. C. League | 1,277 50 |
| Balance | | $10,003 10 |
| Feb. 4, 1910. | Cash advanced | 1,000 00 |
| March 4, 1910. | Cash advanced | 1,750 00 |
| Total | | $12,753 10 |

"And it is desired by the parties hereto to evidence the interest of each; the nature of the trust terms, and conditions upon which said lands were deeded to said J. W. Campbell, trustee; to arrange the mode and manner of handling same; and to fix and determine a period within which all advances made by said J. C. League shall be paid to him with interest:

"Now therefore, we, the said J. C. League, of Galveston county, Texas, and A. McGary and J. W. Campbell and C. C. Wren, of Harris county, Texas, for and in consideration of the premises and the mutual advantage arising to each hereunder, do hereby agree that the said lands shall be held by the said J. W. Campbell, trustee, in trust to be leased, sold, handled, or otherwise disposed of, under the provisions hereof, as follows:

"First. That to secure the payment to J. C. League, at Galveston, Texas, on or before January 1, 1915, all of his advances of money for or on account of said lands, together with interest on each item thereof at the rate of eight per centum per annum from the date of the advancements thereof until paid, the interest computed annually, all said lands and proceeds arising therefrom shall stand pledged until said J. C. League is paid in full, principal and interest; and all proceeds arising from the sale, sales, lease, leases, handling, or other disposition of said lands, shall be paid to said J. C. League, at Galveston, Texas, as the same is realized from said lands, until the said J. C. League shall have been paid in full, principal and interest, all the advances of money made by him for or on account of said lands, and thereafter all other proceeds, if any, from said lands, of whatever character, shall be paid to said parties and be held and owned by them in the following proportions, to wit: To J. C. League one-half thereof; to A. McGary two-tenths thereof; to J. W. Campbell two-tenths thereof, and to C. C. Wren one-tenth thereof, until said lands and all proceeds thereof are consumed and distributed.

"Second. That the said J. W. Campbell and A. McGary, shall, without charge for their services, use their best efforts to negotiate a profitable sale, lease, or other disposition of any part or all of said lands by or before the expiration of this contract, but before closing any deal the consent of all parties hereto shall be requested, and in the event they do not all agree, the majority interest in said lands shall control, provided, however, if a profitable and desirable sale or lease, or combination contract can be made respecting said lands, or any part thereof, and any party hereto objects to it being entered into, or if the interests in said contract are equally divided on any proposition respecting any disposition of said property, then such party or parties desiring the making of such sale or contract shall have the right to tender their interest in the property to the other parties hereto at the rate of such proposed contract, sale or lease, and unless the objecting party or parties at interest intend buying and do buy such interest at the rate offered, such sale, contract, lease, or deal shall be consummated, provided, however, that no part of the land in question shall be offered for sale at a price less than its cost or relative value to the whole property, and always provided that the aforesaid indebtedness owing to J. C. League shall be fully protected; and said J. W. Campbell, trustee, agrees and will execute all such leases, contracts, deeds of conveyance, or other instruments as will be proper to carry out the purposes of this agreement in good faith under the terms and conditions here stated.

"Third. In the event, however, there shall not be realized in cash from said land sufficient proceeds to repay to said J. C. League in full, principal and interest, all his advances for account of said lands, by or before January 1st, A. D. 1915, then the said J. W. Campbell, trustee, is hereby required, and it shall be his duty hereunder, provided this contract has not been extended, as hereinafter set forth, to make, execute and deliver unto said J. C. League a good and sufficient deed of conveyance vesting the absolute fee-simple title in the said J. C. League to all of said lands and proceeds thereof remaining in said trustee's hands, and henceforth all rights, claims, equities, titles and interests in the other parties hereto shall cease and determine, and this contract be henceforth null and void and of no further force and effect.

"Fourth. Nevertheless, should the said A. McGary, J. W. Campbell, and C. C. Wren desire to revive, preserve, and extend their or

either of their interests in this contract, they or either of them shall have the full right and authority to do so for the term of two years from and after January 1, 1915, by paying to J. C. League, in cash, at Galveston, Texas, each his proportionate share (based upon such party's interest herein), of twenty ($20.00) dollars per acre per annum, payable in advance each year, that is, the said A. McGary may so preserve his interest for the year of 1915, by paying to the said J. C. League, at Galveston, Texas. on or before January 1, 1915, the sum of four ($4.00) dollars per acre on said land unsold, and said J. W. Campbell may preserve his interest for said year by making a like payment to said J. C. League at said time, and the said C. C. Wren may so preserve his interest for said year by paying to said J. C. League, in Galveston, Texas, on or before January 1, 1915, the sum of two ($2.00) dollars per acre on the land unsold, all of which payments, when so made, shall operate to preserve and carry this contract as to such share so paid upon and for one year; and any of said parties who have made such payment on the 1st of January, 1915, shall have the right to so extend and preserve their rights under this contract in like manner for the year 1916, by paying a like sum per acre on the unsold land to J. C. League, at Galveston, Texas, on or before January 1, A. D. 1916. However, in no case shall this privilege of extension be allowed beyond December 31, 1916, time being the essence; and it is fully understood and agreed that if this contract has been extended as heretofore stated for the year 1915 or for the year 1916, and one or more of parties fails to make the annual payment provided to be made by him in order to extend and preserve his share herein, then such party failing so to make annual payment shall thereby forfeit all his claim, right, title, and interest in said property to J. C. League absolutely, and this contract shall be ended as to such share so forfeited. But it is provided that the said McGary, J. W. Campbell, and C. C. Wren, or either of them, shall at any time previous to the expiration of this contract as to his interest, have the full right to pay to said J. C. League in cash, at Galveston, Texas, a sum of money sufficient to pay out the principal and interest owing to said J. C. League upon such party's share in said property, and thereafter have, hold, and own such share so paid out in said property jointly with the said J. C. League for the purpose hereof, as if said party has made such advancement in the beginning upon the original purchase of said property.

"Fifth. It is agreed between the parties hereto that said A. McGary, in making warranty deed to said J. W. Campbell, trustee, for said land, shall, nevertheless, only be held to respond thereon to the extent of his interest in said land, and in case of any sale or sales by said trustee, or any expenses incurred by said trustee in preserving the possession and title of said land, all parties hereto shall be firmly bound and held to guarantee the payment of their proper proportion of same to said trustee, based upon their respective interests herein.

"It is understood an agreed that this contract supersedes any and all other deeds, declarations of trust, or other instruments made heretofore between the parties as to said lands and advancements on account of same, and the mode and manner of handling same and the rights of the respective parties therein.

"In witness whereof each of said parties has hereunto subscribed his name in the presence of two witnesses, executing the instrument in four originals, any one of which shall have full credit and standing as lawful evidence of the execution hereof, this 20th day of April, A. D. 1912.

"[Signed]  J. W. Campbell, Trustee,
"J. W. Campbell,
"J. C. League,
"A. McGary,
"Clark C. Wren."

Two witnesses.

Nothing having been realized upon the sale or lease of said lands, and League not having been repaid the money he had advanced for the purchase of same, Campbell, in pursuance of the terms of said contract, on December 31, 1914, conveyed said lands to League by deed, as follows:

"State of Texas, County of Galveston.

"Know all men by these presents: That I, J. W. Campbell, trustee, acting herein for myself and for J. C. League, A. McGary, and C. C. Wren, for whose benefit I now declare I have held the hereinafter described property as trustee, and by and with the knowledge and consent of said A. McGary and C. C. Wren, of the county of Harris, Texas, for and in consideration of the sum of ten ($10.00) dollars cash to me, and for and in consideration of the fact that the hereinafter lands were originally purchased in the name of A. McGary from various parties and the original purchase prices therefor advanced and paid for by J. C. League, the receipt of all which is hereby fully acknowledged as being full, valuable and sufficient, have granted, sold and conveyed, and by these presents do grant, sell and convey unto the said J. C. League, of the county of Galveston, state of Texas, those four certain tracts of land as hereinafter described, intending by this instrument to include and pass unto the said J. C. League all such title as was conveyed to me as trustee by the said A. McGary by his deed dated April 20, 1912, as well as all such warranty or warranties of title as were made to the said A. McGary in his various purchases of said lands, and also as conveyed to me in said deed, to all of which reference is here made for all purposes, and said four tracts of land are further described as follows, to wit: [Then follows field notes.]

"To have and to hold the above-described premises, together with all and singular the rights and appurtenances thereto in any wise belonging unto the said J. C. League, his heirs and assigns forever, and I, as trustee, do hereby bind myself, my heirs, executors and administrators, to warrant and forever defend, all and singular the said premises unto the said J. C. League, his heirs and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof.

"Witness my hand at Houston, Texas, the 31st day of December, A. D. 1914.

"J. W. Campbell, Trustee,

which was duly acknowledged, stamped and placed of record.

On the same date, League sold and conveyed to Campbell an undivided one-half interest in said lands for a consideration of $9,250, $2,500 cash and Campbell's five vendor's lien notes for $1,350 each. Campbell, before conveying the lands to League, had proposed to McGary and Wren that they (Campbell, McGary and Wren) buy the land from League, but they declined to enter into the investment, McGary saying that he did not have the funds, nor was he able to raise same, and Wren being unwilling to risk the investment, Campbell offering to carry them, but they refused to take part in the purchase, and then Campbell deeded the land to League, and independently and individually bought an undivided one-half interest for himself. On January 12, 1915, McGary and Wren executed and delivered a quitclaim deed, ratifying and confirming the deed of Campbell to League of date December 31, 1914. Campbell, still desiring to have his former associates in the venture with him, on January 13, 1915, and without further consideration, entered into the following agreement with McGary and Wren, to wit:

"The State of Texas, County of Harris.

"Whereas heretofore, to wit on the 20th day of April, 1912, A. McGary, of Harris county, Texas, deeded to J. W. Campbell, trustee, four certain tracts of land in Brazoria county, Texas, as follows: [giving field notes]; and

"Whereas, under said deed to J. W. Campbell, trustee, J. C. League, of Galveston county, Texas, A. McGary, Clark C. Wren and J. W. Campbell, all of Harris county, Texas, had rights and interests in said land so conveyed, specifically stated and provided for by instrument executed by said parties the same date as the said conveyance to J. W. Campbell, trustee, of the said four named, being all of the parties at interest in said matter and in said lands; and

"Whereas, in adjustment of their rights and interests, J. W. Campbell, trustee, on December 31, 1914, executed to J. C. League a deed conveying all of said four tracts of land, and on the same day said League sold and conveyed an undivided one-half interest in said lands; and

"Whereas, the said Campbell, McGary, and Wren, for good and valuable consideration satisfactory to all of them, have exchanged and adjusted their rights and interests in said lands in conformity with this instrument, now this instrument witnesseth said agreement and exchange, as follows:

"First. The whole fee-simple title to the said lands is vested in J. C. League and J. W. Campbell, an undivided one-half to each, with full rights to lease, rent, sell, mortgage, contract with reference to, or otherwise handle and dispose of, as to them seems best without interference, let or hindrance on the part of Clark C. Wren or A. McGary or either or both of them.

"In consideration of the premises, said J. W. Campbell does hereby bind himself to, during the time covered by this instrument, hereinafter set forth, to keep a strict and correct account of all moneys or other things of value realized from or coming from the handling of his said undivided one-half interest in said lands, whether by leasing, boring or mining, renting, selling, mortgaging, pledging, contracting with reference to, or otherwise handling or managing said undivided one-half, and that he will also debit the account so kept with all of the money which he has paid or agreed to pay to J. C. League for said undivided one-half of said lands, with interest on said sums at the rate of six per cent. per annum from the date of such payment or promise to pay, and also with any and all sums of money which he may pay out in the proper management and handling of said undivided interest, with interest on each said debit item, at said rate, from the date of its origin, and that if at any time during the term of this contract, as hereinafter set out, the credits so made on said account shall be sufficient to more than pay off and discharge all of the aforesaid debit items, he will account for and pay to said A. McGary one-fifth (⅕) of such excess credits, and to Clark C. Wren one-fifth (⅕) therefor; that he will, on demand from either said McGary or Wren, furnish to them statement of the condition of said account, and make payments and settlement of said account from time to time, at such intervals as may, under the circumstances, be reasonable and proper.

[The next paragraph provides for the management of said property by J. W. Campbell.]

"The terms of this instrument shall continue until the hour of half past two o'clock p. m. on the 20th day of December, 1915, and at that hour on that day, this instrument shall be of no further force or effect, and all and every right and interest herein given to the said McGary and said Wren shall, without any notice or other formality, cease, lapse, and terminate, unless revived and continued in the manner hereinafter provided for.

"That is to say: If on or before said hour on said date the credit items on said account, or which should be thereon, shall equal to or exceed the debit items thereon, then, in this event, this contract shall continue and be binding on all the parties so long as there remains unsold any portion of the aforesaid undivided one-half interest in said lands now held by J. W. Campbell.

"If, at said hour on said date the debit items on said account, or which should appear thereon, exceed the credit items thereon, or which should be thereon, and the said such credit items amount to as much or more than $3,500, then in this event the rights of each the said McGary and said Wren shall automatically continue until December 20, 1916, without any payment by either; but if the sum of such credit items amounts to less than $3,500, then the rights of both said McGary and said Wren shall automatically cease and terminate, unless revived and continued in the next proviso set out, provided that if such credit items on said last-named date, when added together, amount to less than $3,500, then in that event either the said McGary or said Wren may prevent aforesaid lapsing and termination of his said rights and revive and continue his such rights by paying, on or before said hour on December 20, 1915, the sum of two hundred, eighty-six

and 50/100 ($286.50) dollars. And if, on the hour of 2:30 o'clock p. m. on December 20, 1916, the rights of either the one or the other of said McGary or said Wren shall not have ceased and terminated under the terms of this instrument, and if at said hour on said last-named day the said credit items are equal to or exceed the said debit items, then in that event the rights of such of said two, McGary or Wren, whose rights may be continued up to December 20, 1916, shall thereafter continue unimpaired so long as any portion of said undivided one-half interest in said lands now held by said Campbell remains unsold; but if on December 20, 1916, the rights of either of said two persons, McGary or Wren, continue under this contract up to 2:30 o'clock p. m. on that day, and at that hour, if the credit items do not equal or exceed the sum of five thousand ($5,000.00) dollars, then and in that event such of said two persons whose rights may have been preserved up to that time may, by paying to the said Campbell the sum of $302.60 (three hundred two and 60/100 dollars) continue his rights for another year, or until December 20, 1917, at 2:30 o'clock p. m., at which hour his rights hereunder shall automatically cease and terminate, unless the said credit items then equal or exceed the said 'debit items.

"Provided, however, that whenever the rights of either said Wren or said McGary cease or terminate under the provisions hereof, the one whose rights do so cease shall have no right to revive same by any payment or credit occurring thereafter.

"Provided further, that all money paid to said Campbell under the provisions hereof for the purpose of preserving the rights of either the same McGary or Wren after December 20, 1915, shall be entered on said account as a credit.

· "All the provisions of this instrument shall inure to the benefit of the heirs and legal representatives and shall bind the heirs and legal representatives of all the signers hereto, and the rights here given to the said McGary and said Wren may be assigned and transferred and shall inure the benefit of to the heirs and assigns of said parties.

"Executed in triplicate, either copy of which shall be considered as an original, the 13th day of January, 1915.

"J. W. Campbell,
"A. McGary,
"Clark C. Wren."

With named witnesses.

The first oil well came in on the Arnold tract January 8, 1919. This suit was filed August 4, 1920. It was admitted by plaintiff that he moved from the city of Houston out some 11 miles in the country in 1911, and that since that time he had paid little, if any, attention to the matter of trying to sell or lease said lands or to in any manner realize on same, and that he first consulted counsel with a view to bringing this suit in 1919.

[1] The question for determination is whether the pleadings and the evidence adduced were sufficient to raise an issue of fact for the jury. It is well settled that where the evidence is sufficient to raise an issue of fact in a jury trial, it is error for the court to instruct the verdict.

In his motion for a new trial, plaintiff in error states but two grounds, and these are made his two assignments of error, to wit:

"First Assignment of Error. The court erred, to the prejudice of plaintiff, in instructing the jury peremptorily in favor of the defendant, for this: Plaintiff having alleged a good cause of action, and having brought evidence in support of each and every material element of his prima facie case, including a binding contract in writing, placing in plaintiff an interest in the subject-matter of this suit, which the evidence as a matter of law, wholly failed to show a divestiture of upon any adequate or valuable consideration; and made proof that defendants Campbell and the Texas company had in their custody and possession large assets to which plaintiff was and is legally entitled, by virtue of said contract and subsequent dealings between the parties pursuant thereto, said issues should have gone to the jury.

"Second Assignment of Error. The court erred to the prejudice of plaintiff, in peremptorily instructing the jury in favor of defendants J. W. Campbell and Texas Company, for this: Plaintiff having alleged in his petition a good cause of action, it appears from the evidence that each and every essential of plaintiff's prima facie case was adequately supported by sufficient proof to require the court, if not to decide the case as a matter of law in favor of plaintiff, at any rate, to submit the controverted issues, if any, to the jury."

Under these assignments, plaintiff in error presents three propositions, to-wit:

"First Proposition. The undisputed evidence having shown that plaintiff in error acquired an interest in the lands described in plaintiff's petition by the contract of date December 21, 1908, between J. C. League, J. W. Campbell, A. McGary and Clark C. Wren, and plaintiff having pleaded that the instruments executed by him subsequent to this instrument were executed without consideration, and induced by the fraudulent representations of defendant Campbell, and the evidence having plainly raised the issue of lack of consideration and fraudulent representations by defendant, Campbell, the court erred in instructing a verdict against plaintiff in error and in favor of defendant in error, but should have submitted the issue to the jury.

"Second Proposition. The uncontradicted evidence in this case having shown that the plaintiff in error acquired an interest in the lands described in plaintiff's petition by the contract of date December 21, 1908, and that all subsequent instruments executed by him, purporting to limit his interest or divesting him of same, were executed by him without consideration, and in reliance upon the fraudulent representations as to his interest made by the defendant Campbell, the court erred in instructing a verdict in favor of defendant Campbell, but should have instructed the jury to return a verdict in favor of plaintiff in error, A. McGary, for his interest in said land under said contract.

"Third Proposition. Since the law does not favor forfeiture and will only enforce a forfeiture when the language is plain, clear and unambiguous, and since the forfeiture paragraph in the contract of date April 20, 1912, provides as follows: 'In the event, however, there shall not be realized in cash from said lands sufficient proceeds to repay to said J. C. League in full the principal and interest of all his advances for account of said lands by or before January 1, 1915, then the said J. W. Campbell, trustee, is hereby required, and it shall be his duty hereunder, provided this contract has not been extended as hereinafter set forth, to make, execute and deliver unto the said J. C. League a good and sufficient deed of conveyance vesting the absolute fee-simple title in the said J. C. League to all of said lands and proceeds thereof remaining in said trustee's hands, and thereupon all rights, claims, equities, titles and interests of the other parties hereto shall cease and determine and this contract be thenceforth null and void and of no further force and effect,' and since prior to January 1, 1915, the said J. C. Campbell, trustee, with the express knowledge and consent of said J. C. League, had entered into a lease and option contract on the south half of the Arnold tract, which was, on January 1, 1915, in full force and binding effect, and because of such contract said lands were not then remaining in his hands, consequently said lands so contracted were not subject to forfeiture on January 1, 1915, and the said McGary still retains his interest in said south half of the Arnold tract, and the court erred in granting judgment for defendant and in not granting judgment for plaintiff for said interest."

"The first proposition above stated is germane to the first assignment of error, found in the first paragraph of motion for new trial (Tr. p. 131) and copied at the end of this brief.

"The second and third propositions are germane to the second paragraph of said motion for a new trial found in the record as above indicated, and are also submitted as fundamental error independent of said motion for new trial."

From plaintiff in error's brief, page 4.

[2] By his first proposition (based upon his first assignment of error), plaintiff in error asserts that the court erred in peremptorily instructing a verdict against him for in that having shown by the evidence that he acquired an interest in the lands in controversy by virtue of the contract of December 21, 1908, and having pleaded and offered evidence to prove that the instruments executed by him subsequent to this instrument were (1) without consideration, and (2) induced by fraud on the part of Campbell, the issue should have been submitted to the jury.

An inspection of the first assignment of error discloses that same does not set up the question of fraud. Hence the proposition, so far as it alleges fraud, is without support in the assignment, and should not be considered. However, if same had been properly assigned, the record does not support the charge, for the evidence shows that

245 S. W.—8

Campbell was at all times entirely open, frank, and honest in his dealings and conversations with plaintiff in error, and faithful to the interests of all parties connected with the undertaking.

The contention upon which fraud is based is shown by the allegations in paragraph XI, XII and XIII of plaintiff in error's petition, as follows:

"XI. Plaintiff says that at the time of the agreements and understandings, oral and written, and at the time of the consummation of these transactions and acquisition of said properties, there was no kind or character of agreement or understanding that the rights of this plaintiff should be, or his interest in said properties, limited or terminated at any time or that they should be other than absolute and unconditional; and plaintiff further says, by reason of the fact that said agreements and conditions in paragraphs hereinbefore set out he became the absolute and unconditional owner of an undivided one-fourth interest in said lands and all profits arising from the leasing or sale of said land so purchased by him or upon account of minerals derived therefrom, unless his interest therein be reduced to one-fifth thereof because of the agreement respecting said Wren, subject only to the right of said League or his heirs, executors, or assigns to be paid for moneys advanced, interest thereon and expenses incurred in connection therewith, and that the valuable services and expenses incurred by plaintiff in connection with the purchase of said lands the efforts thereafter to procure the development thereof were and are a full and valid and sufficient consideration for the interest therein thus acquired by him.

"XII. Plaintiff further alleges that during all the time embraced within the period covering the acts and things hereinbefore alleged, and long prior thereto, plaintiff and defendant Campbell were friends and intimately acquainted; that plaintiff was not versed in the law, and defendant, Campbell was an attorney of many years' experience and practice, and had the entire confidence of plaintiff as a man and as an attorney; that after the acquisitions of the property at or near West Columbia, as hereinbefore alleged, plaintiff says that he kept a diligent watch for an opportunity to develop said lands for minerals, and frequently took the matter up with defendant Campbell, only to have every suggestion made by plaintiff discouraged and objected to by defendant Campbell, who at all times insisted upon a large cash bonus being paid in connection with any proposition to lease or develop the land, when the attitude of prospective developers at such times did not warrant the demands for such large cash bonus; and plaintiff says that he now believes that defendant Campbell, notwithstanding the confidence and fiduciary relations existing between them, had conceived and entertained the intention to so shape matters as to deprive plaintiff of all his rights and benefits and profits that might accrue to him under the transactions set out in the foregoing paragraphs; and, if mistaken in this belief, as to the presence of such intention on the part of defendant Campbell at said time, then plain-

tiff says that the subsequent acts and conduct of the defendant Campbell are full and sufficient evidence of such intention upon the part of the defendant Campbell; that while the plaintiff at all times consulted their mutual interests, and gave defendant Campbell his entire confidence, defendant Campbell did not treat plaintiff in the same way, although he was in duty bound to do so; that, as one of the evidences of bad faith and unfair dealing upon the part of the defendant Campbell, plaintiff says that prior to April 20, 1912, while the title to all their property purchased by him, and hereinbefore set out, stood in plaintiff's name, and to be so held in accordance with the agreement made between plaintiff, defendant Campbell, and J. C. League, and after plaintiff's rights had been fully and definitely fixed therein, without any limitation whatsoever upon his said rights to own, hold, and enjoy and possess one-fourth of same, and all the profits and mineral rights therein, after payment to League of the items hereinbefore set out, and certainly by not less than one-fifth thereof, if the agreement in regards to the interest of Clark C. Wren was carried out, defendant Campbell represented to plaintiff that Mr. League was not satisfied to let the property stand longer in plaintiff's name or without fixing a time limit upon their rights, which representations, if true, were the result, plaintiff believes, of the acts of Campbell, and certainly were not due to anything done by plaintiff, whose acts and conduct was at all times consistent with the trust imposed upon him; that defendant Campbell repeatedly urged upon plaintiff the necessity of complying with Mr. League's wishes, although same were never communicated to plaintiff by Mr. League, and assured plaintiff and held out to him repeatedly that if plaintiff did not consent to make such changes, the result would be that Mr. League would sue plaintiff for the possession of the lands, and that plaintiff could not successfully resist such suit, and the result would be that, in a very short time and before any opportunity to realize anything for plaintiff or defendant Campbell, in the joint enterprise, League would have full right and title to the lands, and plaintiff and defendant Campbell would be cut off from any right or opportunity to participate thereafter in any profits or mineral rights in connection with said lands.

"XIII. That finally, as the result of such statements and persistent representations upon the part of defendant Campbell, and upon which plaintiff relied, and under the then belief, so inspired by said Campbell, that unless such demands were complied with plaintiff would lose all his rights, and solely on account of his confidence in defendant Campbell, as a man, a friend, and a lawyer, plaintiff consented to make and did make a deed to said property on or about the 20th day of April, 1912, to J. W. Campbell, trustee, the effect of which was to put the legal title in J. W. Campbell as trustee, with the same rights, privileges and benefits theretofore enjoyed by plaintiff, and plaintiff says that, in making said conveyance, he did so upon the urgent instance and advice of defendant Campbell, as being the only way in which he (plaintiff) could preserve or maintain any rights whatever in the property so conveyed to defendant Campbell, although he is now but recently advised, and believes, that such representations, advice, and conclusions of the law upon the part of the defendant Campbell were not true."

The record, as shown by the letters from League to Campbell, and Campbell to League, shows that League from the beginning, insisted upon a time limit being fixed in which plaintiff in error, Campbell and Wren should work out the disposition or development of the lands, but that Campbell continuously opposed fixing such time limit and held League off as long as he could, and we think it is equally clear that plaintiff in error was fully aware of and understood the situation.

Plaintiff in error's main contention as to fraud is that he had an unconditional interest and ownership in the lands in question by virtue of the contract of December 21, 1908, and that he still owns said interest and is entitled to judgment therefor, unless he parted with same when he executed the contract of date April 20, 1912, upon a valid consideration and unaffected by fraud upon the part of Campbell, both of which, that said instrument was without consideration and was also induced by the fraudulent representations of Campbell, are asserted.

Now what were the fraudulent representations of Campbell relied upon by plaintiff in error? In the main that Campbell told plaintiff in error that League was not satisfied to let the land stand longer in plaintiff in error's name, or without fixing a time limit on the rights of the parties thereto, and if plaintiff in error would not consent to make such changes League could sue for possession of the land, and that they could not successfully resist such suit, and that the result would be that in a very short time, and before any opportunity to realize anything for plaintiff in error, Campbell and Wren, League would have full right and title to the land, and they would be cut off from any right or opportunity to participate thereafter in any profits, that League could take the matter to court and force a time limit, and that, acting upon these statements of Campbell, and without any consideration, he executed the conveyance and contract.

[3] Under the original contract Campbell, McGary, and Wren each had an interest in the land bought with League's money. This is clearly shown by the contract, which also shows their respective interests. If part of the land had been sold or leased while the contract was in force and the proceeds had been sufficient to pay League in full, in that event the title as joint owners would have vested in the four parties to all the land remaining, and its partition could have been had, and each party have taken his part in severalty.

The original contract of December 21, 1908, provided that the land should be bought in the name of McGary, and that—

"when said land is purchased, the said McGary should hold the same in his name until such time as it is, by the parties hereto, deemed expedient to convey the legal title to some one in trust, on the following terms and conditions, to wit:

"The equitable title to the same shall be absolute in the said J. C. League until such time as he shall be repaid from the said land all the cash advanced by him and eight per centum per annum on the whole amount from the date of its advancement until it is repaid.

"If at any time by a sale of any part of said land, the said League shall have been so repaid, the balance remaining of said land shall be thereafter owned as follows: Three-sixths ($3/6$) thereof by the said J. C. League, an undivided one-sixth ($1/6$) thereof by each of said Harris county parties.

"If at any time the said land or any part thereof is leased for oil or gas development, it being understood and agreed that no such lease is to be made unless it is agreed upon by all parties hereto, the said repayment or so much thereof as may then be still due shall be made to the said League out of the first cash realized from said land or as bonus or royalty and after such repayment the title to the land leased and the right to royalty under the lease shall be owned in the following proportions: Three-sixths ($3/6$) by the said League, and one-sixth ($1/6$) thereof by each of said Harris county parties.

"If a sale of all said land is made before such repayment from sale or lease of a part thereof, the proceeds, the said League agrees to pay to the said Harris county parties one-half of the balance remaining after repayment to him as aforesaid."

[4, 5] It will be observed that no time limit is set for the repayment of League, or for the selling, leasing, or development for oil of the land. Plaintiff in error contends that he had an indefinite time—all time—in which to hold the land and make effort to realize on same. It is unquestioned that League was to be repaid, but the contract is silent as to when. The rule is well settled that when no time is fixed for performance, the law reads into the contract a reasonable time. 9 Cyc. 611; 2 Parsons on Contracts, 661; 6 R. C. L. 896; Telephone Co. v. Huntington (Tex. Civ. App.) 121 S. W. 242; Bush v. Merrill (Tex. Civ. App.) 156 S. W. 606; Id. (Tex. Com. App.) 206 S. W. 835; Aycock v. Reliance Oil Co., (Tex. Civ. App.) 210 S. W. 848; Noyes v. Barnard, 63 Fed. 782, 11 C. C. A. 424. Some authorities hold that the question of what is a reasonable time is one of law for the court, while others hold that it is a question of fact for the jury. The proper view seems to be that it is a matter of law for the court, when it depends upon the construction of a contract in writing or upon indisputed facts, and that it is a question of fact for the jury when it depends upon facts extrinsic to the contract, and which are matters in dispute. 9 Cyc. 613–615; Benavides v. Hunt, Trustee, 79 Tex. 395, 15 S. W. 396; Fisher v. Hopkins, 4 Wyo.

379, 34 Pac. 899. In the instant case, it was the construction of a contract in writing, and upon undisputed facts. Hence, a question for the court, and we hold that the court did not err in holding that a reasonable time had elapsed.

[6] Plaintiff in error seems to insist that he, Campbell, and Wren had the land in question tied up until some time when it could be sold or leased or developed for oil, so as to repay League, and still make them a profit, without limitation as to time. How long did they have in which to work out the deal, if possible, in order to make a profit? When was League to be repaid his money? It would be unreasonable to say that it was in the minds of the parties at the inception of the original contract that McGary could hold the land indefinitely, if it could not be developed for oil or sold for a profit. It certainly cannot be contended that if the land could never be developed for oil or sold for a profit that League's money could continue indefinitely tied up in the land, and the land stay indefinitely in McGary's hands waiting for unknown chance of speculative value, and League's money never paid. Such result or contention would be a mockery of justice. The courts always avoid, if possible, any construction that is unreasonable or inequitable, and especially one that will put one of the parties at the mercy of the other. The land had been in the hands of McGary for more than three years at the time that he was prevailed upon to convey it in trust to Campbell, and nothing had been accomplished with it, and no immediate or reasonably near deal anticipated or disclosed by the record. League was impatient and wanted some better showing for the safety and repayment of his money, and Campbell's advice to McGary that League could not be made to wait indefinitely and that he was entitled to repayment of his money within a reasonable time, and could go into the courts and compel action, was a correct statement of the law. Benavides v. Hunt, Trustee, 79 Tex. 395, 15 S. W. 396; Telephone Co. v. Huntington (Tex. Civ. App.) 121 S. W. 242; Bush v. Merrill (Tex. Civ. App.) 156 S. W. 606; Id. (Tex. Com. App.) 206 S. W. 835; Aycock v. Reliance Oil Co. (Tex. Civ. App.) 210 S. W. 848; Nunez v. Dautel, 19 Wall. 560, 22 L. Ed. 161; Hicks v. Shouse, 17 B. Mon. (56 Ky.) 486; Sears v. Wright, 24 Me. 278.

[7] Furthermore, we fully agree with counsel for defendant in error that when Campbell told plaintiff in error that in his (Campbell's) judgment the law would read into the contract a time limit, said statement, given its fullest force, was "but the expression of an opinion as to his view of the law on a state of facts equally known to both, and was not and could not be held to be a representation that could be made the basis of a charge of fraud." National Fire Insurance Co. v. Plum-

mer (Tex. Civ. App.) 228 S. W. 250; Upton v. Tribilcock, 91 U. S. 46, 23 L. Ed. 203; Fish v. Cleland, 33 Ill. 243; Walton v. Reager, 20 Tex. 109; Little v. Allen, 56 Tex. 133; Brady v. Edwards, 35 Misc. Rep. 435, 71 N. Y. Supp. 972; Abbott v. Treat, 78 Me. 121, 3 Atl. 44.

[8] But plaintiff in error insists that a fiduciary relation existed between Campbell and plaintiff in error, and that the plaintiff in error trusted in and relied upon the statements made by Campbell to him and acted upon same, and that same were in fraud of his rights. We do not think the record in any wise supports this contention, but that to the contrary it abundantly supports the contention of counsel for defendant in error that—

"So far as the proposed agreement of April 20, 1912, is concerned, there is no basis in the evidence for a claim that there was any fiduciary relation existing between Campbell and McGary. Campbell was not his lawyer as between him, McGary, and League. So far as any relation of confidence and trust was concerned, if he represented any one or owed obligation to any one, it was League. League had put his money into this venture on his faith and belief in Campbell, and on Campbell's judgment, as he declares repeatedly in his letters.

"Furthermore, although Campbell, McGary, and Wren were in the same attitude as to League's demands—each equally interested in gaining the greatest possible time—McGary had clashed with Campbell as to what was to be done; they had almost come to blows, and if ever two men were dealing at arms' length as to any particular matter, they were."

[9, 10] Plaintiff in error's second contention that the contract of April 20, 1912, between League on the one side and plaintiff in error, Campbell, and Wren on the other, and which specially recites that "it is desired by the parties hereto to evidence the interests of each, the nature of the trust, terms and conditions upon which said lands were deeded to said J. W. Campbell, trustee; to arrange the mode and manner of handling same, and to fix and determine a period within which all advances made by the said J. C. League shall be paid him with interest, * * *" was without consideration, we think should be overruled.

Valuable consideration, in the sense of law, may consist of some right, interest, profit or benefit accruing to one party, or some forbearance, loss or responsibility given, suffered or undertaken by the other. Page on Contracts, § 514, p. 84; 6 R. C. L. § 67, p. 654; Keitt v. Gresham (Tex. Civ. App.) 174 S. W. 884. By this instrument, Campbell, McGary, and Wren were, without cost to them, given the right to continue, for a period of nearly three years, to make effort to sell, lease or otherwise manipulate the lands for profit, and League forebore to insist upon a settlement of the matter and a sale of the lands in order to get his money, which he had already foreborne for more than three years. In other words, in the language of counsel for defendant in error:

"If League had not been in an antagonistic attitude, if he had not been threatening to take the matter to the courts, and if this agreement had not been made by McGary, Campbell and Wren to buy peace and to settle controversies—all of which in themselves afforded ample consideration for the contract—the contract in itself establishes such additional right, interest, profit and benefit accruing to Campbell, McGary and Wren as fully supported the contract, in the following particulars, to wit:

"(1) A definite assurance that they could keep League's money, then amounting to about $15,000, tied up until the 1st of January, 1915, nearly three years later, so as to give them that definite additional time in which to dispose of the property profitably as an oil proposition, and make a profit, and perhaps a big profit. In the absence of this stipulation they were always in jeopardy—whether he had done so before or not—of League getting restless and concluding that he had carried the bunch long enough and demand a sale to pay his indebtedness.

"(2) An express stipulation and agreement on the part of League—which they had never had before—that McGary for $4 per acre, Campbell for $4 per acre, and Wren for $2 per acre might carry forward, and each independently and without having to chance the ability of their associates to do their part, their respective interests for one and then for two years more. This is a definite and distinct right that they had never had before.

"(3) The right to buy, at any time during the first period or the extended period, Campbell one-fifth in severalty, McGary one-fifth in severalty, and Wren one-tenth in severalty, for the same proportionate part of the original cost price of the lands, with interest on such part and so acquire that interest in the land in severalty. Under this provision they were relieved from any charge as to taxes or other expenses incurred on the land prior to that purchase, except the interest to League, and were practically given an option on a specified and indefinite undivided interest in $15,000 worth of land for practically four years, in territory that had shown marked evidence of oil for many years, and in which oil had been produced in substantial quantities, though the field had been by no means proven, and this even though oil had been brought in and the land had gone to $1,000 per acre in value.

"Even though it be said that this right to buy was only a substitute for a corresponding interest, they already had in the land, the interest that they had was without definite date of duration fixed by the terms of the contract itself; was subject to attack at any time in the courts and so to be involved in litigation, a menace to any oil proposition, generally destructive, especially in an active field, as is well known to any one advised as to such matters; and their interest under the original arrangement was not subject to individual segregation at all, except on the repayment of all of League's money, with interest, in a one-fifth or a one-tenth and could be only enforced by the

payment of that full sum and then a partition proceeding in the courts.

"(4) The definite fixing in Campbell, as trustee,—and he was, from the inception, jointly associated with McGary and Wren as party of the other part to the contract—and with the obligation on McGary to assist Campbell with such committent rights and powers as they carried to negotiate sales, leases and generally handle the property, subject to the approval of the other parties at interest.

"All of the above are clearly additional and definite rights and privileges vested in Campbell, McGary and Wren under this new contract."

[11] Besides this, it appears in that contract that the portion of McGary (plaintiff in error) was increased from one-sixth to one-fifth, which, if there had been development successfully had in that period, would have been much to his advantage. There can be no question as to the sufficiency of the consideration where there is a benefit to one party and a detriment to the other. Ripy Bros. v. Lillard, 149 Ky. 726, 149 S. W. 1009; Lone Star Canal Co. v. Broussard (Tex. Civ. App.) 176 S. W. 649; Harp v. Hamilton (Tex. Civ. App.) 177 S. W. 565.

Furthermore, plaintiff in error, joined by Wren, on January 12, 1915, after Campbell had by virtue of and in pursuance of the contract of April 20, 1912, on December 31, 1914, conveyed the lands in question to League in payment for the money he had advanced to purchase same, and after League, on said last-named date, had sold and conveyed to Campbell an undivided one-half interest in said lands, executed and delivered a deed to League and Campbell ratifying and confirming the deed from Campbell to League, and quitclaiming any and all rights, title and interest they had in said lands to the said League and Campbell. On the very next day, January 13, Campbell, voluntarily and without any consideration moving to him, offered to said McGary and Wren an agreement in writing, which recited (1) the execution of the deed from McGary, of April 20, 1912, to Campbell, conveying the said lands in trust; and (2) the contract of said date between League on the one hand and Campbell, McGary and Wren on the other, which set forth the rights and interest of each party in and to the lands, and provided a time limit for the working out of said interests and repayment of League; and (3) that in the adjustment of said rights under said contract, Campbell, trustee, had on December 31, 1914, conveyed all of said lands to League; and (4) that on said date League had sold and conveyed to Campbell an undivided one-half interest in said lands; and (5) that Campbell, McGary and Wren "for good and valuable consideration satisfactory to all of them" had adjusted their rights and interest in said lands and agreed that the fee-simple title to all of said lands was fixed in said League and Campbell, an undivided one-half in each, with full right to control and dispose of same without interference from said McGary or Wren, and provided that Campbell obligated himself to keep an account of the moneys realized by his handling of his undivided one-half of said lands and expenses incurred, and would debit that account with the amount, $9,250, he had agreed to pay League for same, with interest thereon at 6 per cent., and cost and expenses incident to the handling of said interest in said lands, and if, during the term of the contract, the credits should be more than sufficient to pay off the debit items, he would account for and pay to McGary and Wren each one-fifth of such excess; that the contract should continue in effect until 2:30 p. m. December 30, 1915, when it should terminate unless the credit items on the account should equal or exceed the debit items, in which event the contract should continue and be in force as long as there remained any portion of Campbell's said undivided one-half interest, or if at the hour on the date named should the sum of such credits amount to as much or more than $3,500, in that event the interest of McGary and Wren would automatically continue until December 20, 1916, one year without payment of any further consideration by either; if they did not equal or exceed the sum of $3,500, either McGary or Wren could continue his rights and interest by paying to Campbell on said date the sum of $286.50; with like provisions for termination on December 20, 1917, if the credit items did not equal or exceed the debit items, or the credit items did not equal or exceed the sum of $50,000 or McGary and Wren might continue their interest by paying to Campbell the sum of $306.60 each, in the absence of which the rights of said McGary and Wren should terminate and cease absolutely, which said offer and agreement they accepted.

This instrument gave them the right to participate in any profits that Campbell might make in the management of his one-half of said lands for one year without cost to them. At the end of that time, nothing having been realized out of said lands, and no immediate prospect appearing to realize, neither of them exercised their option to keep their rights alive for another year by paying Campbell the amount mentioned in the contract, and under its terms their rights completely lapsed. And, we think in recognition of this, the said McGary and Wren, on December 31, 1915, executed and delivered to Campbell the deed quitclaiming all right, title and claim they had to said lands.

[12-14] But plaintiff in error insists that the quitclaim deeds executed by him and Wren were without consideration. A sufficient answer to this contention is that these instruments only acknowledged facts already in existence and were not necessary. By the expiration of the time limit set by the in-

struments of April 20, 1912, and January 13, 1913, their rights were at an end, no release was necessary, and it would have made no difference whether these quitclaim deeds were ever executed, or whether they had a consideration. However, the undisputed evidence is that the first quitclaim deed was executed January 12, 1913, after Campbell had conveyed the lands to League, and reference therein was made to such conveyance and to the purchase by Campbell of an undivided one-half, and was only giving record confirmation to what Campbell had done with McGary's knowledge and consent, and having so executed and acknowledged same, we think, under the circumstances, conclusively imports a consideration. 18 C. J. 162; Newman v. Newman (Tex. Civ. App.) 86 S. W. 636; Robertson v. Hefley, 55 Tex. Civ. App. 368, 118 S. W. 1159.

Moreover, on the next day, January 13, 1913, after the execution of said quitclaim, Campbell voluntarily tendered to McGary and Wren the extension agreement above discussed of an interest in his one-half of said lands, which, of course, he would not have done if McGary had assumed an antagonistic attitude or challenged the propriety of his conduct, as trustee, in reconveying to League, or the propriety of his purchasing a part of the land, which extension agreement and contract both McGary and Wren accepted and executed; and McGary having availed himself of this voluntary extension, we do not think should now be heard to question the consideration of the quitclaim deed. Furthermore, we think that Campbell's having voluntarily, in said extension agreement and contract, given plaintiff in error and Wren an interest in the one-half of the lands bought by him from League, that same was done on the faith of the execution of said quitclaim deed by said McGary and Wren, and they having accepted and executed said extension agreement and contract, it afforded ample consideration for said quitclaim deed. Knowing all the facts and knowing that Campbell had taken title adverse to the claim that he (McGary) once had, and accepting an interest under the new title of Campbell, he should not now be heard to question it.

Again, as these quitclaim deeds of 1915, executed by plaintiff in error and Wren, having been made in confirmation of League's title, as well as Campbell's, and made with knowledge that Campbell was buying out the interest that they formerly had with League, doing so under the belief that he was buying an unchallenged title so far as McGary and Wren were concerned, McGary, after all these years, having full knowledge of all the facts, should not be heard to say that there was no consideration for these instruments.

We have discussed and disposed of all of what we believe to be the controlling ques-

tions in the case. Plaintiff in error presents and urges other questions, but, as we do not think any of them present error, they are all overruled.

Believing that the proper judgment was rendered in the court below, the same is affirmed.