## WRATHER v. DEMPSTER MILL MFG. CO.

Circuit Court of Appeals, Fifth Circuit.
Jan. 23, 1930.

No. 5484.

Cleo G. Clayton, of Amarillo, Tex., and Alex M. Mood, of Fort Worth, Tex. (Cleo G. Clayton, of Amarillo, Tex., and Alex M. Mood, of Fort Worth, Tex., on the brief), for appellant.

Ben H. Stone, of Amarillo, Tex. (Ben H. Stone, of Amarillo, Tex., on the brief), for appellee.

Before WALKER and BRYAN, Circuit Judges, and DAWKINS, District Judge.

DAWKINS, District Judge. This action was instituted as a suit at law upon an open account as to one of the defendants, J. Rufus Williams, and upon certain obligations of guaranty or indemnity on the part of the other defendant, J. R. Wrather.

Plaintiff, appellee, was in the plumbing supply business in the city of Amarillo, Tex., and Williams, desiring to purchase the materials from it on credit, induced his uncle, Wrather, to execute in favor of appellee the following instrument, to wit:

"Amarillo, Tex., June 2, 1926.

"Dempster Mill Mfg. Co., Amarillo, Texas—Gentlemen: I, or we, hereby acknowledge full liability for all plumbing material you may furnish the Williams Plumbing Company of Amarillo, Texas, on all jobs they may do, and guarantee payment of their account to you in full at least twice a month, at which time said account will be subject to two percent cash discount.

"[Signed]   J. R. Wrather."

When this suit was filed on July 14, 1928, plaintiff claimed a balance on account of $10,538.64. Judgment went by default against Williams, and there appears to have been no dispute as to the correctness of the indebtedness claimed. However, defendant Wrather denied liability upon the ground that "all of the terms and conditions of the contract * * * are not embraced and contained in said instrument of guaranty"; that said defendant, at the request of Williams, went to the office of plaintiff and, at the instance of the latter's agent, guaranteed the purchases to be made by Williams, but before doing so, he (defendant) informed the plaintiff's said agent that he "would not be willing to guarantee the payment * * * for longer periods than two weeks at a time," and that he would only do so "upon the express condition and understanding that the statements of the defendant, Williams, account with the plaintiff, would be presented to the defendant Williams each two weeks," and if not paid upon their being so presented, then they should be presented to this defendant in order that he "might limit his liability under said guarantee," to which arrangement and understanding defendant avers the agent and manager of plaintiff acceded, and stated that "he would draw a written instrument of guaranty to that effect"; that immediately thereafter plaintiff prepared and presented to this defendant the written instrument of guaranty first pleaded; that upon said instrument being presented to this defendant, he refused to sign the same for the reason that it did not provide that he would not be liable thereon unless defendant Williams' accounts were presented as above set forth; whereupon and in reply plaintiff's said agent stated that said written instrument of guaranty did in effect provide that this defendant would not be liable thereon unless the accounts were presented in the manner indicated, and that upon said representations and interpretation by the agent of plaintiff of the meaning of the said contract and with the understanding that it would be so construed, he (defendant) signed the same; and in event the court should not so construe it, then the defendant alleges that he signed the said guaranty "by mistake in that he fully believed that such instrument would be so construed," and did not "agree to become bound, and liable as provided in the instrument as it is written," for the reason that it did not contain the full terms of the agreement, which was due to the mistake

and misapprehension of this defendant, brought about by the statements and representations of the plaintiff; that if it is not construed as represented by plaintiff's agent, then it is an instrument to which defendant never consented or agreed to be bound, and that he so informed the plaintiff at the time of signing; that the failure to reduce the verbal understanding to writing was not due to any fault or negligence on the part of this defendant, but solely to the acts and statements of the agent of plaintiff.

Defendant further alleges that the acts and representations of plaintiff and its agent amounted to "fraud, deceit and misrepresentation," and that its failure to present the statements to defendant as agreed upon each two weeks absolved him from liability; that this defendant did not know that Williams was not paying his account as agreed upon and the first knowledge that defendant had of the fact was in the latter part of December, 1927, or early part of January, 1928, when plaintiff made demand upon him for the payment of the sum claimed in this case.

Defendant further alleges that on or about the 1st of September, 1926, plaintiff informed Williams that inasmuch as he was not a member of the Master Plumbers' Association of Amarillo, Tex., it would have to cease selling him at wholesale unless he joined said organization, and advised Williams to become a member thereof, which Williams did on or about the 20th of September, 1926, and plaintiff thereupon agreed to sell the said Williams such supplies and materials on the basis of 30 and 60 days' credit, as he might require, thereby making a new and distinct contract from that guaranteed by this defendant, materially different from the original and to which this defendant did not consent and which was substituted for the one sued upon, all of which facts this defendant did not learn until after the filing of this suit, and had the effect in law of releasing him from the obligation of guaranty above described. Further, that by reason of plaintiff's failure to comply with the agreement and understanding had with respect to the presenting of the accounts for payment to Williams, and upon his failure to pay to defendant, each two weeks, to afford him an opportunity to protect himself against the accumulation of the large indebtedness now claimed, plaintiff is estopped to demand payment thereof from this defendant.

Plaintiff filed certain exceptions to the answer of defendant, setting up that statements of Williams' account had been rendered to Wrather, who had raised no objec-

tion thereto, but endeavored to get plaintiff to accept Williams' note, refusing to also sign the same for "personal reasons," and thereafter on May 12, 1927, executed the second instrument sued on, guaranteeing the payment for additional classes of material at the rate of one-fourth of the total each month, with the balance bearing interest at the rate of 8 per cent. per annum, as follows:

"Amarillo, Tex., May 12, 1927.

"Dempster Mill Mfg. Company, Amarillo, Texas—Gentlemen: I, hereby, further guarantee the account of Williams Plbg. Company of Amarillo, Texas, for Gas and Water Regulators to be purchased from you, the payment of same to be one-fourth of the total amount each month until paid, bearing interest at the rate of 8% per annum.

"Yours very truly,     [Signed]
     "J. R. Wrather."

That defendant Wrather further secured a power of attorney from Williams to sell all of the latter's property and apply the proceeds thereof to plaintiff's account, but did not make any claim that he had been discharged because of the failure to present semimonthly statements, as alleged.

The case was tried to a jury, but after the evidence was concluded the court instructed a verdict for the plaintiff, upon the ground, in effect, that the defenses set up were of an equitable nature and in the opinion of the court were not sufficient to overcome the force and effect of the plain and unambiguous guarantee which the defendant Wrather had executed.

Defendant has appealed and relies upon these defenses, which in his brief he concedes to have been equitable in character and does not complain that the court took them away from the jury and decided them itself. However, he does complain that the court erred in nine separate assignments, as follows:

(1) In holding that the guaranty contract first quoted hereinabove was not procured with the understanding relied upon by defendant that the plaintiff would construe it as requiring a presentation of statements of the account of Williams twice a month, and if he did not pay that the same should be presented to defendant Wrather, and that the failure to do so did not constitute an equitable defense to defendant's liability thereon;

(2) In holding that the provision for payment in full twice a month was for the benefit of plaintiff;

(3) In not finding that this provision, by a fair preponderance of the evidence, was for the benefit of defendant;

(4) In holding, after deciding as a matter of fact some sort of an agreement was made with respect to presenting the account twice each month, that the same could not be read into the contract when asserted as a defense by defendant;

(5) In holding that such an understanding did not estop plaintiff from recovering on the contract;

(6) In holding that the real guaranty contract could not be shown by parol because the writing was complete, plain, and unambiguous;

(7) In holding that the defendant was bound by the contract, to which the evidence shows he never consented;

(8) In holding that the defendant is bound by the contract because the evidence showing that the true understanding was materially different from the one sued upon and the written agreement was procured by the fraud of plaintiff; and,

(9) In failing to submit to the jury the issue of fact and law as to whether or not the original contract was thereafter materially changed or altered.

It must be remembered that there is no contention here that any additional contract, separate and distinct from the written instrument first hereinabove quoted, was entered into; but the evidence revolves around the issue as to what was said by the parties at the time as to the meaning of the written agreement. It is claimed by the defendant that he refused to sign the contract of guaranty because it did not specifically provide that statements of Williams' account should be presented to him every two weeks and, if he failed to pay, they should then be presented to defendant, but was assured by Nolan, representing the plaintiff, that that was what the contract meant, as written. Nolan, in his testimony, denies this but admits that something was said by Wrather about wanting to keep track of the account.

As held by the lower court, we think the guaranty contract on its face is clear and free from ambiguity, and that the provision for payment twice a month, without any other evidence, was intended for the benefit of plaintiff. We also think that it must be construed according to its ordinary and natural meaning, unless the evidence is conclusive that it was modified or by construction and application of the parties was shown

to have meant something else. At best, the evidence of defendant would tend to show a discussion of the meaning of the language used, while the plaintiff, in extending credit, is presumed to have relied upon the document itself. The defenses were of an equitable character, and we think the court was justified in disposing of them as was done. Not only is the evidence conflicting as to what was said at the time, but in the light of the clear language of the agreement we think insufficient to overturn its plain purpose. The record also shows that Williams, in the beginning and until about the 1st of January, 1927, did pay his account regularly; in fact, about that time overpaid it a few cents. The man in charge of plaintiff's credit department testified that about the 1st of March, 1927, the account showed a balance of approximately $500, which had not been paid regularly and upon bringing the matter to Wrather's attention, he instructed plaintiff to continue selling Williams and defendant would stand good upon the guaranty to the amount of $10,000, if necessary. This witness further states that the condition of the account was repeatedly brought to the attention of defendant, at least twice a month and sometimes oftener. This the defendant denies and claims that he did not know of its condition until the latter part of December, 1927, or early part of January, 1930. To say the least, the testimony upon the question of fact is conflicting and the lower judge, having seen and heard these witnesses, was in the best position to judge of their credibility. Reviewing it all, we think it falls considerably short of what is necessary to discharge the burden resting upon the defendant of sustaining the defenses pleaded.

█ Even if we view the matter as contended for by defendant, that the agent of plaintiff stated the contract meant and would be construed as now claimed by him, this was merely an expression of an opinion of law upon the meaning of the language used and cannot be urged as a ground for defeating the plain undertaking of the contract. As was said by the Supreme Court of the United States in Mutual Life Ins. Co. v. Phinney, 178 U. S. 327, 20 S. Ct. 906, 911, 44 L. Ed. 1088:

"But whether that statement of the agent was correct in matter of law is doubtful; whether true or false, or, more accurately, whether correct or not, in its interpretation of the law applicable to this contract, is immaterial. It was merely a statement of what

he supposed the law was, and the insured was under the same obligations to know the law that the company, or its agent, was. The jury evidently proceeded upon the supposition that the insurance company, located in New York, knew what the law of that state was; the insured, residing in Washington, did not, and when the agent stated what the condition of the contract was, he misrepresented the law of New York, of which the insured was ignorant, and, being ignorant, was not bound by any act based thereon in the way of abandonment or rescission. But surely no such rule as that obtains. When two parties enter into a contract, and make it determinable by the law of another state, it is conclusively presumed that each of them knows the law in respect to which they make the contract. There is no presumption of ignorance on the one side and knowledge on the other. Reverse the situation. Suppose the insurance company had made this contract as a Washington contract, and there had been some peculiar provision of that state controlling all contracts made within the state; could the company, a corporation of New York, thereafter be permitted to say that it did not know what the law of Washington was; that the insured, as a resident of that state, must be presumed to have known it; that he did not communicate his information, and therefore it was not bound by that law, and that if he said anything in reference to it, it was a case of false representation or deceit? No one would contend this. And so when these two parties, the insurance company and the insured, dealing, as we are now supposing, in a contract which they mutually agreed should be determinable by the laws of New York, it is an absolute presumption that each knew those laws, and that neither one could be misled by any statement in respect thereto on the part of the other. Whatever opinion either might express in reference to those statutes was a mere matter of opinion. He was chargeable with knowledge, just exactly as the insurance company was. Sturm v. Boker, 150 U. S. 312, 14 S. Ct. 99, 37 L. Ed. 1093, is decisive of this question. In that case the statement of the insured as to a question of law was insisted upon as conclusive, but this court said (p. 336, L. Ed. p. 1102, S. Ct. p. 107):

" 'Both the defendants and the insurance companies had the written contracts before them, and were presumed, as a matter of law, to know their legal effect and operation. What the complainant said in his testimony was a statement of opinion upon a question

of law, where the facts were equally well known to both parties. Such statements of opinion do not operate as an estoppel. If he had said, in express terms, that by that contract he was responsible for the loss, it would have been, under the circumstances, only the expression of an opinion as to the law of the contract, and not a declaration or admission of a fact, such as would estop him from subsequently taking a different position as to the true interpretation of the written instrument. * * * ' ''

See also Smith v. Richards, 13 Pet. 26, 10 L. Ed. 42; Wheeler v. Holloway (Tex. Com. App.) 276 S. W. 653; McGary v. Campbell (Tex. Civ. App.) 245 S. W. 106, 115.

As to the defense that the plaintiff entered into a new arrangement for dealing with Williams in such manner as to release the defendant, we think the evidence is wholly insufficient to sustain such contention or to warrant its submission to the jury. In any event, as pointed out by the plaintiff, no request for such a charge was made by defendant, nor was the matter otherwise called to the attention of the court to obtain a ruling thereupon, and the defendant is without a bill of exceptions before this court to sustain this assignment of error. Carter v. Carusi et al., 112 U. S. 478, 5 S. Ct. 281, 28 L. Ed. 820.

For the reasons assigned the judgment appealed from is affirmed.